## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

RUBEN ESCANO,

      Plaintiff,

v.                                               Civ. No. 22-360 DHU/GJF

RCI LLC, TIMESCAPE RESORTS LLC,
STEPHEN BRADLEY, MEXICAN
RIVIERA RESORTS UNLIMITED, and
JOHN DOES 1–10,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED
## DISPOSITION ON DEFENDANTS' MOTIONS TO DISMISS

THIS MATTER is before the Court on motions to dismiss filed by Defendant Mexican Riviera Resorts Unlimited (MXRRU) [ECF 7], Defendant RCI [ECF 42], and Defendants Timescape Resorts and Steven Bradley [ECF 50]. The motions are fully briefed.[1] As set forth below, the Court recommends[2] granting these motions in part by (1) excluding the alleged February 8, 2018, telemarketing call as barred by the statute of limitations and (2) dismissing with prejudice Counts Five and Six, which are founded on a provision of the Telephone Consumer Protection Act (TCPA) that provides no private right of action. The Court recommends that the motions otherwise be denied because Plaintiff has (a) made a prima facie showing of personal jurisdiction over Defendants RCI, Timescape, and Bradley; (b) pleaded facts that plausibly suggest RCI, Timescape, and Bradley are liable under the applicable TCPA and New Mexico Unfair

---

[1] *See* ECFs 7, 14, 26 (briefing on MXRRU's motion); 42, 43, 48 (on RCI's motion); 50, 53, 55 (on Timescape/Bradley's motion). As part of their motion to dismiss, Timescape and Bradley filed a two-page Request for Judicial Notice, which is also fully briefed, *see* ECFs 51 54, 56, and which the Court recommends granting. *See infra* note 4.

[2] The Court files this Proposed Findings and Recommended Disposition (PFRD) pursuant to the presiding judge's June 27, 2022, Order of Reference Relating to Non-Prisoner Pro Se Cases. ECF 33.

Practices Act (NMUPA) provisions; and (c) asserted claims against Timescape and Bradley that are not barred by issue preclusion or claim preclusion.

## I.   BACKGROUND

Plaintiff's Complaint [ECF 1-1] alleges various TCPA and NMUPA claims (and one trespass to chattels claim) and seeks to, *inter alia*, "recover statutory damages for automatically-dialed and unsolicited telemarketing calls, and to enjoin such calls." Compl. [ECF 1-1] at ¶ 1. In relevant part, the Complaint states:[3]

> 2. All of the telemarketing calls began with deceptive pre-recorded messages, typified by one such message: "Thank you for choosing Marriott Hotels! We would like to inform you that your confirmation number was drawn and you are entitled to receive a complimentary stay!"

> 15. Beginning February 8, 2018 and continuing to January 20, 2021 MXRRU [a Mexico-based company, ¶ 8] and Timescape [a Florida-based company, ¶ 6] initiated at least twenty-seven automatically-dialed and unsolicited telephone calls (hereinafter, "the calls") to [New Mexico resident, ¶ 4] Plaintiff's cell phone . . .

> 16. MXRRU and Timescape made such calls as part of a joint enterprise, and on behalf of and under the direct, implied, or apparent authority of RCI [another Florida-based company, ¶ 5].

> l7. At all times relevant, Timescape acted under the direction and control of Mr. Bradley. Mr. Bradley is also an employee of Timescape [and resides in Florida, ¶ 7].

> 18. During the calls, MXRRU and Timescape attempted to avoid legal reproach by "spoofing" the phone numbers from which it [sic] called [in order to display inaccurate caller ID information] and by instructing their employees not to immediately communicate the true name of the company calling . . .

> 19. All of the calls were made in an attempt to sell vacation packages and timeshares for the Calypso Cay Resort in Kissimmee, Florida [which "Timescape owns and operates," ¶ 6], or Sunset World Group resorts in or near Cancun, Mexico [which MXRRU "own and operates," ¶ 8].

> 20. Plaintiff's cell phone number, ending in -8938, has been listed on the Federal Trade Commission's National Do Not Call Registry for over a decade. The FTC's

---

[3] For ease of reference, the excerpts from Plaintiff's Complaint are quoted with their original numbering.

National Do Not Call Registry is available to telemarketers wishing to operate within the law.

21. During at least three of the calls, including the very first call on February 8, 2018, Plaintiff told an MXRRU or Timescape phone representative that Plaintiff did not want to be called again. All three times, he requested that his phone number be placed on an internal "do not call" list.

22. Undeterred, MXRRU and Timescape continued calling Plaintiff'.

23. The calls began with various pre-recorded messages deceptively announcing the calls as coming from "Marriott Hotels," "Hyatt Hotels," "Hilton Hotels," "Disney World," or "Booking.com."

24. In addition to the pre-recorded message alleged in ¶ 2—which commenced a preponderance of the calls—other pre-recorded messages stated, for example:

   a) "This is an exclusive announcement from Hyatt Hotels! Your telephone number has been pre-selected to receive a complimentary stay in one of our five-star hotels!"
   b) "Congratulations! You have been pre-selected by Booking.com to receive a $999 credit toward your next vacation!"
   c) "Thank you for choosing Hilton Hotels! We would like to inform you that your booking number was chosen for a complimentary stay!"

25. MXRRU and Timescape referenced these well-known names and trademarks, to legitimize their scheme.

26. None of the companies that own such trademarks actually transmit calls with such pre-recorded messages.

27. All of the pre-recorded messages were made with the same woman's voice and with similar excited intonations and cadence.

28. The content of all of the calls in the instant case, and their associated pre-recorded messages, was substantially similar enough that a reasonable person would identify the calls as coming from the same entity.

33. At no time, during the period in question, did Defendants have any prior business or contractual relationship with Plaintiff.

38. In transmitting the calls, Defendants utilized equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

42. The calls aggravated Plaintiff, disrupted his days, and required him to divert attention away from his work and personal life to tend to and answer such unwarranted intrusions of his time.

43. Accordingly, the calls were repeated invasions of Plaintiff's privacy that required him to divert attention away from his work and personal life to tend to and answer such intrusions of his time.

44. Although the calls began with pre-recorded messages announcing the calls as coming from well-known hotel brands, such as "Marriott" and "Hyatt," the phone representatives to whom Plaintiff spoke during the calls[ ] attempted to sell Plaintiff vacation packages at other unrelated hotels and resorts.

45. All of the vacation packages that the phone representatives attempted to sell to Plaintiff were for stays at either (a) the Calypso Cay Resort, located in Kissimmee, Florida [which is "owned and operated" by Timescape," ¶ 6], or (b) hotels and resorts operating under the Sunset World Group brand, including "Laguna Suites Golf and Spa Hotel" and "Ocean Spa Hotel," located in or near Cancun, Mexico [and "owned and operated" by MXRRU, ¶ 8].

46. During at least one call, including the August 24, 2020 call, a phone representative offered Plaintiff a 4-person vacation package to Calypso Cay Resorts for $999.

53. Mr. Bradley directed Timescape employees to place the calls . . . . On behalf of Timescape, Mr. Bradley entered into agreements with MXRRU and RCI to transmit the calls.

### A Joint Enterprise Between MXRRU and Timescape

56. MXRRU and Timescape united to set up, direct, and control a telemarketing operation together. . . .

58. MXRRU operated a call center in Mexico as part of the joint enterprise, while Timescape operated a call center in Florida as part of the joint enterprise.

59. MXRRU and Timescape's telemarketing operation used predictive dialer technology. A predictive dialer is a type of ATDS that, given a set number of phone representatives, "predicts" the maximum number of telephone subscribers that can be called at once in order for the call to be answered within a set period of time by a live phone representative—after a prerecorded message is played.

60. MXRRU and Timescape both initiated calls from their respective call centers. But if an MXRRU phone representative in Mexico was not available to speak to a telephone subscriber for a call initiated from MXRRU's call center, the call was

transferred to a Timescape phone representative in Florida, who attempted to sell a vacation package at MXRRU's resorts on behalf of MXRRU, and vice-versa.

61. During the August 3, 2018 call, Plaintiff initially spoke to a phone representative—who was a Timescape phone representative—who said she was located in Orlando, Florida. After a 45-minute sales pitch, Plaintiff was then transferred to an MXRRU phone representative . . .

62. Separately, during the August 24, 2020 call described supra [*see* ¶ 46], Plaintiff spoke with a phone representative who said he was located in Mexico. However, that representative—who was an MXRRU phone representative—attempted to sell Plaintiff a vacation package at the Calypso Cay Resort in Florida.

63. MXRRU and Timescape entered into an agreement with each other to initiate automatically-dialed calls en-masse to telephone subscribers across the United States in an attempt to sell (a) *vacation packages* for their resorts and (b) *timeshare memberships* at their resorts and other resorts within RCI's timeshare exchange network.

## MXRRU and Timescape: Operating as agents of RCI

70. RCI owns, manages, and operates a timeshare exchange network. This exchange network allows owners of timeshares at any of the resorts within RCI's network to exchange their timeshare for a timeshare at another resort within the network. . . .

71. MXRRU and Timescape own and operate resorts within RCI's timeshare exchange network. Phone representatives attempted to sell Plaintiff vacation packages at these resorts during the calls.

72. MXRRU and Timescape financially benefited from being a part of RCI's timeshare exchange network. Indeed, Timescape's website states that RCI is "critical to our club's success" . . . . [citation and alteration omitted]

73. RCI also financially benefited from MXRRU and Timescape being a part of its timeshare exchange network and the new members MXRRU and Timescape brought into RCI's timeshare exchange network from the joint telemarketing operation. Indeed, RCI awarded the Chief Executive Officer of MXRRU, a man named Orlando Arroyo, with their "President's Award" two years in a row. In a press release, RCI stated that Mr. Arroyo was given the award in "recognition of the amount of business that Sunset World's vacation clubs have generated for RCI." [citation omitted]

74. As a condition of purchasing the vacation packages [that they] attempt[ed] to [sell] to Plaintiff during the calls, the MXRRU and Timescape phone representatives required that Plaintiff attend a tour and presentation during

Plaintiff's stay at the resort for the respective vacation package (i.e., a vacation package at either a Sunset World Group resort or the Calypso Cay Resort).

75. Upon information and belief, the tour and presentation would consist of a sales pitch to entice Plaintiff to buy a timeshare at the respective resort for the vacation package.

76. During at least one of the calls, a phone representative stated, "We are the marketing division of RCI."

77. RCI authorized MXRRU and Timescape phone representatives to represent themselves as RCI employees.

80. RCI was at all relevant times aware of Timescape and MXRRU's marketing activities.

81. Nonetheless, RCI awarded MXRRU's phone representatives, who operate within and as part of the joint enterprise, with sales awards, including sales awards that RCI calls "Top Seller," "Alpha," and "Diamond" awards.

83. At all times relevant, MXRRU, Timescape, and Mr. Bradley were operating on behalf of, to the benefit of, at the direction of, under control of, and as agents of RCI.

The Complaint in the instant lawsuit is nearly identical to Plaintiff's complaint in *Escano v. Holidays Network Grp., LLC, et al.*, No. 22cv58-JB/SMV (D.N.M.) (hereinafter "*Escano I*"). In each version, the complaint addressed the same 27 alleged telemarketing calls. *Compare Escano I* Compl. [ECF 1-1 (22cv58) at 3 –37], *with* Compl.[4]  The *Escano I* complaint—which named "Holidays Network Group, LLC," "Jorge Bravo," and "Does 1 through 100" as defendants—did not expressly name (or mention) any of the Defendants he has sued in the instant case (RCI, Timescape, Bradley, and MXRRU). *See Escano I* Compl.  Approximately one month after Holidays' motion to dismiss for lack of personal jurisdiction was fully briefed in *Escano I*,

---

[4] The *Escano I* filings are a matter of public record readily accessible to this Court.  The Court thus recommends granting Timescape's Request for Judicial Notice [ECF 51], which requests that the Court—for purposes of considering Timescape's motion to dismiss—take judicial notice of two *Escano I* filings: (1) the Summons and Complaint [ECF 1-1 (22cv58)] and (2) the Final Judgment [ECF 19 (22cv58)].  *See* ECFs 51 at 1–2; 56 at 1–2; *see also Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (observing that "[a] district court . . . may take judicial notice of its own files and records, as well as facts which are a matter of public record" (quotation omitted)).

the parties—pursuant to their settlement agreement, *see* ECF 53 at 2, 8, 12—filed a "Stipulation of Dismissal with Prejudice" under Rule 41(a)(1)(A)(ii), thereby "jointly stipulat[ing] to [the] dismissal" of that case.  ECF 18 (22cv58) at 1.  Three weeks later, Judge Browning entered final judgment in *Escano I*, dismissing "all of Plaintiff Ruben Escano's claims against Defendants Holidays Network Group, LLC, Jorge Bravo, and Does 1–100 . . . with prejudice."  ECF 19 (22cv58) at 1.

The Defendants in the instant case have filed a total of three motions to dismiss.  The Court first discusses the limited relief it recommends granting (i.e., excluding one of the twenty-seven phone calls and dismissing two of the Complaint's fourteen Counts).  The Court then explains that the rest of the relief requested in the motions should be denied because Plaintiff has (a) made a prima facie showing of personal jurisdiction, (b) alleged facts that plausibly suggest liability, and (c) asserted claims that are not barred by res judicata.

## II.   THE COURT RECOMMENDS GRANTING LIMITED RELIEF

### A.  The February 8, 2018, Call Should Be Excluded

Plaintiff and MXRRU agree that the call allegedly made on February 8, 2018, *see* Compl. at ¶ 88, "should be excluded from this lawsuit as barred by the applicable [four-year] statute of limitations."  ECFs 7, 14, 26.[5]  Consequently, as the other Defendants do not object to excluding this phone call from the lawsuit, the Court will recommend granting MXRRU's request to exclude from this litigation the February 8, 2018, call as barred by the statute of limitations.[6]

---

[5] These parties also agree that the call allegedly made on April 3, 2018, *see* Compl. at ¶ 90, is within the four-year statute of limitations—given that four years later (i.e., April 3, 2022) fell on a Sunday and the Complaint was filed on Monday, April 4, 2022.  *See* ECFs 14, 26; *see also* Fed. R. Civ. P. 6(a) (establishing that—with respect to "*any statute* that does not specify a method of computing time"—"if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday" (emphasis added)); N.M. R. Ann. 1-006(A) (same).

[6] The parties agree that both the TCPA-related claims (Counts 1–7) and the state law claims (Counts 8–14) are subject to essentially the same four-year statute of limitations.  *See* ECFs 7, 14; *see also Giovanniello v. ALM Media, LLC*,

### B.  Counts Five and Six Should Be Dismissed

Counts Five and Six of the Complaint respectively assert claims for violations of 47 C.F.R. § 64.1200(b)(1) and (2).  Compl. at ¶¶ 131–36.  These regulatory provisions require "[a]ll artificial or prerecorded voice telephone messages" to (1) "state clearly [at 'the beginning of the message'] the identity of the business . . . that is responsible for initiating the call," § 64.1200(b)(1); and (2) "state clearly [either 'during or after the message'] the telephone number . . . of such business," § 64.1200(b)(2).

The regulatory provisions in 47 C.F.R. § 64.1200(b) implement a subsection of the TCPA, which mandates that the Federal Communications Commission (FCC) "prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone."  47 U.S.C. § 227(d)(3).  But "[t]his [TCPA] subsection [§ 227(d)] does not create an associated private right of action."  *Barrett v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, 2020 U.S. Dist. LEXIS 89055, at *13 (D. Utah May 20, 2020) (citing § 227(d)).  Therefore, "[the] [t]echnical and procedural standards specific to automated calls [that] are included in § 227(d) and [its] accompanying regulation 47 C.F.R. § 64.1200(b) . . . do not provide a private right of action or a statutory-damages provision."  *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011).[7]

---

726 F.3d 106, 107 (2d Cir. 2013) (concluding that 28 U.S.C. § 1658 provides for a four-year statute of limitations to claims brought under the TCPA); N.M. Stat. Ann. § 37-1-4 (1978) (setting the statute of limitations in New Mexico for "all other actions not herein otherwise provided for" as four years).

[7] *See also Kapp v. E. Wis. Water Conditioning Co.*, No. 20-CV-286, 2021 U.S. Dist. LEXIS 7054, at *8–9 (E.D. Wis. Jan. 13, 2021) (observing that "'virtually every federal court to have considered this issue' agrees that . . . subsection (d) does not confer a private right of action" (quoting *Hurley v. Wayne Cty. Bd. of Educ.*, No. 3:16-9949, 2017 U.S. Dist. LEXIS 86345, at *9 (S.D. W. Va. Jun. 6, 2017) (collecting cases))); *Lynn v. Monarch Recovery Mgmt.*, No. WDQ-11-2824, 2013 U.S. Dist. LEXIS 41700, at *13 (D. Md. Mar. 22, 2013) (observing that in "[i]mplementing § 227(d)(3), the FCC promulgated 47 C.F.R. § 64.1200(b)"—but that "§ 227(d) does not authorize a private right of action" for these technical and procedural standards).

"Plaintiff concedes that these two regulations [47 C.F.R. § 64.1200(b)(1) and (2)] do not include private rights of action." ECF 43 at 18. Nevertheless, Plaintiff requests that the Court not dismiss Counts Five and Six so that Plaintiff can "prove the underlying facts of these Counts because they inform the severity of [his] trespass to chattel claim" in Count Fourteen. *Id.* at 17–19 (asserting that such facts would show "knowledge that a disturbance of a telephone was going to occur"—which is an "element of Plaintiff's trespass to chattel claim" (quotation omitted)).

Because Counts Five and Six allege violations of FCC regulations that do not provide private rights of action, these counts "fail[ ] to state a claim upon which *relief* can be granted." Fed. R. Civ. P. 12(b)(6) (emphasis added); *see, e.g.*, *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (observing that, to survive a Rule 12(b)(6) motion, a pleading must "state a claim to *relief* that is plausible on its face" (emphasis added)). Consequently, the Court recommends dismissing these counts with prejudice under Rule 12(b)(6). *See also N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1235 n.22 (10th Cir. 2021) (observing that "dismissal with prejudice is generally appropriate under Rule 12(b)(6) when amending the complaint would be futile").[8]

## III. PLAINTIFF HAS MADE A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION OVER RCI, TIMESCAPE, AND BRADLEY

### A. RCI's Primary Personal Jurisdiction Arguments

RCI contends that it should be "dismissed from this action for lack of personal jurisdiction" pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Complaint lacks "any plausible

---

[8] Although Plaintiff wishes to present evidence (in support of Count Fourteen) that Defendants knew their telemarketing calls would "disturb" his phone, a response to a motion to dismiss is not the proper forum to establish the extent to which the fact finder may later consider such evidence. Furthermore, the Court is not aware of—and Plaintiff fails to cite—any authority that either (1) specifically prohibits evidence of a knowing phone disturbance (for a trespass to chattel claim in New Mexico) absent a separate claim alleging federal regulatory violations (e.g., Counts Five and Six) or (2) generally permits a party to plead an otherwise *invalid* claim for relief so that it may later submit evidence in support of a separate *valid* claim for relief.

assertion of wrongdoing by RCI." ECF 42 at 3–7.[9] First, RCI argues that the Complaint "fail[s] to allege that Defendant RCI is *directly* liable for the alleged telephone calls" because the Complaint "alleges that MXRRU and Timescape initiated every telephone call." *Id.* at 5 (emphasis added) (citing Compl. at ¶¶ 84–118); ECF 48 at 2–3. Second, RCI emphasizes that the Complaint does not "show that RCI is *vicariously* liable for the calls" because it does not "allege any facts to support a reasonable inference that MXRRU and/or Timescape acted as the agents of RCI or were engaged in a joint enterprise with RCI." ECF 42 at 5–7. RCI specifically asserts that the Complaint lacks any factual allegations to plausibly suggest that RCI ever "retained," "controlled," "supervised," or "maintained any sort of relationship with" MXRRU or Timescape. *Id.* at 3, 6–7 (quotation omitted); ECF 48 at 3–5.

For his part, Plaintiff contends that the Complaint properly alleges direct liability because it "alternatively alleges that RCI . . . placed the calls as part of [a] joint enterprise"—given that "[d]uring at least one of the calls, a phone representative stated, 'We are the marketing division of RCI.'" ECF 43 at 7–8 (quoting Compl. at ¶ 76). Plaintiff next points out that the Complaint properly alleges vicarious liability because it not only alleges that MXRRU and Timescape/Bradley had "agreements with" and "were operating at the direction of" RCI to transmit the calls, but it also alleges specific examples of such agreements and cooperation. *Id.* at 8–12 (quoting Compl. at ¶¶ 53, 83) (alterations omitted). "For example," the Complaint alleges that MXRRU and Timescape made these calls to sell vacation packages—conditioned on the purchaser "attend[ing] a presentation that would consist of a sales pitch to buy a timeshare [at MXRRU and Timescape-affiliated resorts, which are also] within RCI's timeshare exchange network." *Id.* at 1,

---

[9] RCI also contends that the Complaint should likewise be dismissed under Rule 12(b)(6) for failure to state a claim because the Complaint "makes no factual allegation[s] . . . that connect[ ] or fairly trace[ ] the phone calls" to RCI. ECF 42 at 8 (quotation omitted).

8, 10 (citing Compl. at ¶¶ 70, 71, 74, 75); *see also id.* at 10; Compl. at ¶¶ 6, 8, 19, 63, 70–75 (alleging MXRRU, Timescape, and RCI all benefited from such an arrangement).

In further support of his assertion of vicarious liability, Plaintiff highlights the Complaint's allegations that (1) RCI authorized MXRRU and Timescape phone representatives to "represent themselves as RCI employees"; (2) a phone representative stated during at least one call that "[w]e are the marketing division of RCI"; (3) RCI "knew about [MXRRU and Timescape's telemarketing] activities"; (4) such activities "financially benefit[ed]" RCI; and (5) RCI "failed to take action to cease such conduct"—but instead gave various "sales awards" to MXRRU's "phone representatives" and MXRRU's Chief Executive Officer in light of the business they "generated for RCI."   ECF 43 at 10–11 (quoting Compl. at ¶¶ 73, 76, 77) (citing Compl. at 80–81).

### B.   Timescape and Bradley's Primary Personal Jurisdiction Arguments

Timescape and Bradley contend that the Court lacks personal jurisdiction over them because they have had no "jurisdictional contacts with New Mexico for purposes of [Plaintiff's claims]."   ECF 8–14.   They insist that Plaintiff's "bald[ ]" allegations that "MXRRU and [Timescape] made the telephone calls" are simply "false," "not true," and "based . . . upon wildly erroneous assumptions" and "guess[es]."   *Id.* at 11–12.   Furthermore, Timescape and Bradley assert that such "bare, unverified jurisdictional allegations in [Plaintiff's Complaint]" cannot be "supported by competent proof"—but instead "have been solidly refuted by [Timescape] and Bradley in [their] declarations."   *Id.* at 11 (citing Timescape Decl. [ECF 50-3] at ¶¶ 14–25; Bradley Decl. [ECF 50-4] at ¶¶ 22–26).   In other words, they assert that—aside from "Plaintiff's say-so"— "[n]*othing* connects [Timescape] or Bradley to these calls."   *Id.* at 11–12 (emphasis added).

Plaintiff, however, contends that "[a]s alleged in the Complaint, Timescape made numerous telemarketing phone calls to Plaintiff as part of a joint enterprise with [MXRRU]."

ECF 53 at 1 (citing Compl. at ¶ 15).   In support of this contention, Plaintiff highlights the Complaint's allegations that (1) "a phone representative offered Plaintiff a vacation package to Timescape's resort in Florida"; (2) a "phone representative said he was located in Florida"; and (3) "Bradley directed his Timescape employees to place the calls, and entered into agreements with MXRRU and [RCI] in furtherance of their telemarketing scheme." *Id.* (citing Compl. at ¶¶ 46, 53, 61).   Furthermore, Plaintiff has now submitted his own declaration—"based on an investigation into the provenance of the calls, and the named defendants' telemarketing scheme"— that counters "all of [Timescape and Bradley's] material declarations." *Id.* at 5–6 (citing Pl.'s Decl. [ECF 53-1]).   Consequently, Plaintiff concludes that, "at this early pleading stage," the Court has personal jurisdiction over Timescape and Bradley because the Court must "resolve [the declarations'] conflicting statements in Plaintiff's favor." *Id.* at 6 (quoting *LNS Enters. v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022)).[10]

### C.  Applicable Personal Jurisdiction Legal Standards

"[A] federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting Fed. R. Civ. P. 4(k)(1)(A)).   "[I]n addition to satisfying this state law requirement, the exercise of personal jurisdiction must 'not offend the due process clause of the Fourteenth Amendment.'" *United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002) (quoting *Far West*

---

[10] Timescape and Bradley argue that the Court should disregard Plaintiff's declaration—viewing it as mere "legal horseplay" that attempts to "create a sham fact issue"—because the declaration is (1) "lacking foundational facts" to satisfy the personal knowledge requirement of Federal Rule of Evidence 602 (which permits a witness to "testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"); (2) "internally inconsistent and contradict[ing] allegations in his Complaint and in a prior declaration he filed in *Escano I*"; (3) based "entirely on speculation of a connection between the caller and [Timescape]"; and (4) "nothing more than a formulaic recitation of [his] allegations" along with "bare denials" of Defendants' averments. ECF 55 at 5–8 (quotations and citations omitted).

*Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).  But "[b]ecause New Mexico's long-arm statute has been interpreted to extend 'as far as constitutionally permissible,'" *Good v. Fuji Fire & Marine Ins. Co.*, 271 Fed. Appx. 756, 759 (10th Cir. 2008) (unpublished) (quoting *Tercero v. Roman Catholic Diocese*, 132 N.M. 312, 316 (N.M. 2002)), the personal jurisdiction analysis "collapses into a single due process analysis under the Constitution."  *Botefuhr*, 309 F.3d at 1271 (quotation omitted).

"Consistent with due process, a court may exercise specific personal jurisdiction over a non-resident defendant only when that defendant has the requisite 'minimum contacts' with the forum state, such that having to defend the lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[11]  "[T]he Supreme Court has instructed that the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' [a] defendant's forum-related activities.'" *Id.* at 966 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  "If the defendant's actions create sufficient minimum contacts, the court must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Id.* (alterations omitted) (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)).[12]

---

[11] In the instant case, Plaintiff contends that the Court has *specific* jurisdiction over Defendants.  *See* ECFs 43 at 5–7; 53 at 4–6.  He does not "contend that [this Court] ha[s] *general* jurisdiction over [them]."  *Eighteen Seventy*, 32 F.4th at 965 n.8 (emphasis added) (observing that "the relevant inquiry in [the general jurisdiction] context is whether a defendant was 'essentially at home' in a forum state" (quotation omitted)).

[12] The courts consider five factors in analyzing whether the exercise of personal jurisdiction "comport[s] with fair play and substantial justice:" "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the

Plaintiffs "bear the burden of establishing personal jurisdiction." *Eighteen Seventy,* 32 F.4th at 964. "[A]t this early stage in the litigation, in the absence of an evidentiary hearing, [plaintiffs] need only make a prima facie showing of personal jurisdiction." *Id.* "In other words, the plaintiff may defeat a motion to dismiss by presenting evidence—either uncontested allegations in its complaint or evidence in the form of an affidavit or declaration—'that if true would support jurisdiction over the defendant.'" *Id.* (quoting *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020)). "This showing is 'light.'" *Racher v. Lusk*, 674 Fed. Appx. 787, 789 (10th Cir. 2016) (unpublished) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Furthermore, "[*a*]*ll* factual disputes are resolved in favor of the plaintiff[ ] when determining the sufficiency of this showing." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009) (emphasis added); *see also Dudnikov*, 514 F.3d at 1070 (observing that "*any* factual disputes in the parties' affidavits *must* be resolved in plaintiff['s] favor" (emphasis added)); *Eighteen Seventy,* 32 F.4th at 96 (same); *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (same); *Ten Mile Indus. Park v. Western Plains Serv.*, 810 F.2d 1518, 1524 (10th Cir. 1987) (same and noting that "plaintiff's prima facie showing is sufficient *notwithstanding the contrary presentation by the moving party*" (emphasis added) (quotation omitted)).[13]

---

plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1227 (10th Cir. 2021) (quotations omitted). Nevertheless, "instances where the exercise of personal jurisdiction offends fair play and substantial justice are 'rare.'" *Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1289 (10th Cir. 2020) (quoting *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009)); *see also Hood*, 21 F.4th at 1227 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that . . . other considerations would render jurisdiction unreasonable." (quoting *Burger King*, 471 U.S. at 477)).

[13] "Few such solicitous rules apply in the district court when personal jurisdiction is assessed in an evidentiary hearing or at trial; in such cases, the plaintiff generally must establish, by a preponderance of the evidence, that personal jurisdiction exists." *Dudnikov*, 514 F.3d at 1070 n.4

"Of course, even if personal jurisdiction is contested and found initially on the pleadings and by affidavit, it may be reviewed again at subsequent stages in the trial court proceedings as evidence accumulates." *Dudnikov*, 514 F.3d at 1069–70 n.3; *see also FDIC*, 959 F.2d at 174 (observing that "whatever degree of proof is required initially, a plaintiff must have proved by the end of trial the jurisdictional facts by a preponderance of the evidence" (quotation omitted)).[14]

**D.  Personal Jurisdiction Analysis**

The Court concludes that Plaintiff has satisfied his "light" burden, *Wenz*, 55 F.3d at 1505, of making a "prima facie showing of personal jurisdiction" over RCI, Timescape, and Bradley. *Eighteen Seventy,* 32 F.4th at 964.  Consequently, the Court recommends denying RCI, Timescape, and Bradley's requests to be dismissed from this action under Rule 12(b)(2) for lack of personal jurisdiction.

1.  <u>Plaintiff Has Made a Prima Facie Showing of Personal Jurisdiction over RCI</u>

With regard to RCI, Plaintiff has put forth allegations that "if true would support jurisdiction over [RCI]." *Eighteen Seventy,* 32 F.4th at 964.  Specifically, Plaintiff has alleged that (1) "[o]n behalf of Timescape, Mr. Bradley entered into agreements with MXRRU and RCI to transmit the calls," Compl. at ¶ 53; (2) "RCI authorized MXRRU and Timescape phone representatives to represent themselves as RCI employees," *id.* at ¶ 77; (3) "MXRRU, Timescape, and Mr. Bradley . . . operat[ed] on behalf of, to the benefit of, at the direction of, under control of, and as agents of RCI," *id.* at ¶ 83 (4) "[d]uring at least one of the calls, a phone representative stated, 'We are the marketing division of RCI,'" *id.* at ¶ 76; (5) MXRRU and Timescape's marketing activities included making telemarketing calls to sell vacation packages that required

---

[14] No parties have requested an evidentiary hearing or jurisdictional discovery in connection with the pending motions, *see* ECFs 42, 43, 48, 50, 53, 55, and the Court finds that such proceedings at this stage are unnecessary to resolve the motions. *See, e.g.*, *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009) (noting that "district courts generally have broad discretion to manage their dockets" (quotation omitted)).

attendance at a presentation that marketed timeshares at MXRRU and Timescape-affiliated resorts that were within RCI's timeshare network, *id.* at ¶¶ 70, 71, 74, 75; (6) "RCI was . . . aware of Timescape and MXRRU's marketing activities," *id.* at ¶ 80; (7) such marketing activities "financially benefited" RCI, *id.* at ¶¶ 6, 70–75; and (8) RCI gave various "sales awards" to MXRRU's "phone representatives" and MXRRU's Chief Executive Officer in light of the business they "generated for RCI," *id.* at ¶¶ 73, 81.

Such allegations—if true—would mean that RCI either (1) agreed to allow Timescape and MXRRU representatives to make telemarketing calls (including those calls to Plaintiff) while holding themselves out as "RCI *employees*" or "the marketing division of RCI," Compl. at ¶¶ 76–77 (emphasis added); or (2) "alternatively . . . [was] directly liable for [at least some of the offending] calls," *id.* at ¶ 79.[15]  Such allegations, if true, would also mean that Timescape and MXRRU's telemarketing efforts did not just financially benefit RCI by coincidence.  Instead, such telemarketing efforts would suggest an intentional business relationship that benefited all three companies—a relationship that RCI actively *encouraged* and *managed* (i.e., controlled), including through the incentive of various sales awards and the authorization for "MXRRU and Timescape phone representatives to represent themselves as RCI *employees*."  Compl. at ¶¶ 76–77 (emphasis added).

Consequently, in light of these allegations, Plaintiff has made a prima facie showing that RCI has satisfied "the requisite minimum contacts with [New Mexico], such that having to defend the lawsuit [here] would not offend traditional notions of fair play and substantial justice,"

---

[15] *See also United States v. Roe*, 913 F.3d 1285, 1300 n.21 (10th Cir. 2019) (observing that "Fed. R. Civ. P. 8(d) specifically allows for the pleading of inconsistent claims and inconsistent facts"); Fed. R. Civ. P. 8(d) (providing that (1) "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. *If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient;*" and (2) "[a] party may state as many separate claims or defenses as it has, regardless of consistency" (emphasis added)).

*Eighteen Seventy*, 32 F.4th at 965 (quotation omitted)—whether through (1) RCI's encouragement, authorization, and control of Timescape and MXRRU in acting on RCI's behalf, including by representing themselves as RCI employees, when calling Plaintiff;[16] or (2) RCI directly placing at least some of the calls.[17]

        2.  <u>Plaintiff Has Made a Prima Facie Showing of Personal Jurisdiction over Timescape and Bradley</u>

The facts alleged in the Complaint and Plaintiff's Declaration [ECF 53-1] are vigorously disputed by Timescape and Bradley's motion [ECF 50] and respective Declarations [ECFs 50-3, 50-4]. Nevertheless, in determining whether Plaintiff has made a "prima facie showing of personal jurisdiction" over Timescape and Bradley, *Eighteen Seventy,* 32 F.4th at 964, the Court *must* resolve "[a]ll factual disputes are resolved in favor of [Plaintiff]." *Rusakiewicz v. Lowe*, 556 F.3d at 1100; *see also Dudnikov*, 514 F.3d at 1070 ("[A]ny factual disputes in the parties' affidavits must be resolved in plaintiff['s] favor.").

In resolving these disputes in favor of Plaintiff, the Court is constrained to conclude—for purposes of assessing Plaintiff's prima facie showing of personal jurisdiction—that "Timescape and Mr. Bradley made the telephone calls that [Plaintiff] allege[s] in the Complaint" (i.e., the

---

[16] *See also Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990) (observing that "it is well-established that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state" when such activities are "committed in the course of or within the scope of the agent's employment"); *Gutierrez v. Uni Trans, LLC*, No. 1:21-cv-00073-KWR-SCY, 2022 U.S. Dist. LEXIS 20351, at *20–21 (D.N.M. Feb. 4, 2022) (observing that "New Mexico permits the exercise of personal jurisdiction based on an agency theory" and that, for example, "when the related activities of one co-venturer in the forum are sufficient to sustain the exercise of jurisdiction, personal jurisdiction ordinarily will lie as to all of the co-participants in the venture" (quotation omitted)).

[17] The Court also concludes that, under Rule 12(b)(6), the Complaint sufficiently "connects or fairly traces the phone calls" to RCI. ECF 42 at 8 (quotation omitted). As illustrated above, the Complaint contains "enough allegations of fact, taken as true" to "plausibly suggest [RCI] is liable" whether directly or indirectly, for the offending calls. *Alpenglow*, 894 F.3d at 1195; *see also Escano v. Symmetry Fin. Grp. of N.C., LLC*, No. 2:21-cv-0884 RB-GBW, 2022 U.S. Dist. LEXIS 103654, at *8 (D.N.M. Jun. 9, 2022) (Brack, J.) (observing that "vicarious liability may be imposed under federal common law principles of agency for violations of [the TCPA] that are committed by third-party telemarketers" and that "New Mexico [l]aw recognizes vicarious liability and agency theory" (quotations and alteration omitted)).

"twenty-seven automatically-dialed and unsolicited telephone calls to Plaintiff's cell phone" from February 2018 to January 2021, including a call that "offered Plaintiff a 4-person vacation package" at a Timescape-affiliated resort, Compl. at ¶¶ 15, 46).  Pl.'s Decl. at ¶ 6; *see also id.* at ¶¶ 10, 15–16 (declaring that Timescape and Bradley, *inter alia*, "operated a call center for making outbound telemarketing calls" and "employed third parties" to make these calls, the purpose of which was to market "vacation packages and timeshare interests").  Consequently, the Court concludes that Plaintiff has also satisfied his "light" burden, *Wenz*, 55 F.3d at 1505, of making a "prima facie showing of personal jurisdiction" over Timescape and Bradley by putting forth "evidence in the form of an affidavit or declaration" that "if true would support jurisdiction over [RCI]." *Eighteen Seventy*, 32 F.4th at 964.

Timescape and Bradley argue that the Court should resolve the parties' factual dispute in their favor.  *See supra* note 10 (discussing Timescape and Bradley's reply [ECF 55 at 5–8]).  In so doing, they offer several reasons why a factfinder should discount the facts alleged in Plaintiff's Declaration in favor of the facts alleged in their own Declarations.  *Id.*  In addition, they argue that Plaintiff's Declaration lacks sufficient factual assurances of Plaintiff's "personal knowledge of the matter" such that Federal Rule of Evidence 602 would preclude Plaintiff from testifying as a witness on this matter.  *Id.*; *cf.* Pl.'s Decl. (asserting the Declaration is "based upon [Plaintiff's] personal knowledge and as a result of [his] inquiry and investigation of the facts stated [therein]"). The Court, however, *must* resolve *all* factual disputes in the parties' declarations in Plaintiff's favor at this particular stage in the litigation—a stage that requires only a "light" prima facie showing of personal jurisdiction.  *Rusakiewicz*, 556 F.3d at 1100; *Wenz*, 55 F.3d at 1505.  And the Court must do so irrespective of whether the factual assertions in Plaintiff's declaration are, for example, based on inadmissible hearsay or otherwise fail to satisfy all of the admissibility standards in the Federal

Rules of Evidence. *See Eighteen Seventy,* 32 F.4th at 964; *Rusakiewicz*, 556 F.3d at 1100;

*Dudnikov*, 514 F.3d at 1070; *FDIC*, 959 F.2d at 174; *Ten Mile Indus. Park*, 810 F.2d at 1524.

The Court, however, reminds the parties that "even if personal jurisdiction is contested and

found initially on the pleadings and by affidavit [or declaration], it may be reviewed again at

subsequent stages in the trial court proceedings as evidence accumulates." *Dudnikov*, 514 F.3d at

1069–70 n.3. Furthermore, Plaintiff "must have proved by the end of trial the jurisdictional facts

by a preponderance of the evidence." *FDIC*, 959 F.2d at 174.

## IV. THE FACTUAL ALLEGATIONS PLAUSIBLY SUGGEST RCI, TIMESCAPE, AND BRADLEY ARE LIABLE

### A. Parties' Primary Rule 12(b)(6) Arguments

Defendants RCI, Timescape, and Bradley argue that "Count I and III must be dismissed

because Plaintiff fails to state a claim relating to the use of [an] ATDS." ECF 42 at 9–11.[18]

Specifically, they assert that the Complaint fails to adequately allege these ATDS claims because

it does nothing more than include "the bare allegation that an ATDS was used." *Id.* at 9 (quotation

omitted). In other words, Defendants contend that the Complaint "is devoid of any allegations to

support a reasonable inference that the technology used to dial Plaintiff's telephone number was

'stored' or 'produced' by a random or sequential number generator as opposed to generated from

a pre-produced list." *Id.* at 10–11; ECF 48 at 5–6.

These Defendants also contend that "Counts II, IV, VII, XII, and XIII must be dismissed

because Plaintiff has not established that the Defendants called a residential telephone number."

ECF 42 at 11–12 (asserting that "[n]owhere in the Complaint does Plaintiff allege that he uses his

cellphone as a residential phone"); ECF 48 at 6–7. In addition, they contend that Plaintiff has

---

[18] *See also* ECF 50 at 17 (representing that Timescape and Bradley have "incorporate[d] by reference the [Rule 12(b)(6) arguments" in RCI's motion to dismiss [ECF 42] and corresponding reply [ECF 48] that the Court addresses in Section IV.)

failed to state a claim under § 57-12-22(B)(2) of the NMUPA because the Complaint does not allege that the calls (1) "misrepresent[ed] [their] primary purpose" (2) through the use of a "euphemism."  ECFs 42 at 12–13; 48 at 7.

For his part, Plaintiff contends that he has asserted valid ATDS claims because the Complaint alleges that (1) "all of the calls began with a pre-recorded message"; (2) "[the] pre-recorded messages were made with the same woman's voice and with similar excited intonations and cadence"; (3) "at least one of the calls began with more than two seconds of silence"; (4) "Defendants have never had any prior business or contractual relationship with Plaintiff or any consent to call him"; (5) "the calls were made en-masse to telephone subscribers across the United States"; (6) Defendants use a "predictive dialer" calling system; and (7) a "predictive dialer is "a type of ATDS" that "predicts the maximum number of telephone subscribers that can be called at once in order for the call to be answered within a set period of time by a live phone representative—after a prerecorded message is played."  ECF 43 at 12–15 (quotations omitted).

Plaintiff also contends that his Complaint "alleges specific facts showing that Plaintiff's cell phone is indeed a personal phone, not a business or work phone," including that the calls (1) "required him to divert attention away from his *personal* life"; (2) "were repeated invasions of his privacy"; (3) "disrupted his days"; (4) "deprived him of the use and *enjoyment* of his cell phone"; and (5) "his cell phone is his *personal* property."  *Id.* at 15–16 (emphasis in original) (quotations and alterations omitted).  In addition, Plaintiff contends that the calls misrepresented their primary purposes because they pretended to call Plaintiff to discuss a "complimentary stay" at a hotel—when in fact they sought to sell "vacations packages" that required attendance at a "sales pitch" timeshare presentation.  *Id.* at 1, 16–17.

**B. Applicable Rule 12(b)(6) Legal Standards**

    1. <u>General Pleading Standard</u>

"In an ordinary civil action, the Federal Rules of Civil Procedure require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). In other words, "the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). Otherwise, a court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"To survive a Rule 12(b)(6) motion," *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), a claim for relief must "contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Alpenglow*, 894 F.3d at 1195 (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). Although "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, … it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Consequently, "'legal conclusions' as well as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" are not "entitled to the assumption of truth." *Alpenglow,* 894 F.3d at 1195 (quoting *Iqbal*, 556 U.S. at 678–79).

A court must, however, "'assume the veracity' of the well-pleaded factual allegations 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). In other words, the "factual content [must] allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] disregard conclusory

statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Alpenglow,* 894 F.3d at 1195 (quoting *Khalik,* 671 F.3d at 1191).

### 2. Telephone Consumer Protection Act

"Americans passionately disagree about many things.  But they are largely united in their disdain for robocalls.  The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone."  *Barr v. Am. Ass'n of Political Consultants (AAPC)*, 140 S. Ct. 2335, 2343 (2020).  Consequently, "[f]or nearly 30 years, the people's representatives in Congress have been fighting back. . . . [T]he Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Id.*[19]

The TCPA specifically prohibits, *inter alia*, "'any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice' to 'any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.'" *Id.* at 2344 (emphasis in original) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)).  "In plain English, the TCPA prohibited almost all robocalls to cell phones."  *Id.*  In addition, "[t]he TCPA imposes tough penalties for violating the robocall restriction."  *Id.* at 2345.  For instance, "[t]he TCPA creates a private right of action for persons to sue to enjoin unlawful uses of autodialers and to recover up

---

[19] "A leading Senate sponsor of the TCPA captured the zeitgeist in 1991, describing robocalls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.'"  *AAPC*, 140 S. Ct. at 2343 (quoting 137 Cong. Rec. 30821 (1991)).

to \$1,500 per violation or three times the plaintiffs' actual monetary losses." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1168 (2021) (citing § 227(b)(3)).[20]

### a. Automatic Telephone Dialing System

Aside from "prohibit[ing] calls using 'an artificial or prerecorded voice' to various types of phone lines," the TCPA also "proscribes . . . making calls with an 'automatic telephone dialing system' [ATDS]" *Id.* at 1167–73 (quoting §§ 227(a)(1), (b)(1)).  "To qualify as an [ATDS]" the telemarketing equipment must have "the capacity to use a *random or sequential number generator* to either store or produce phone numbers to be called." *Id.* at 1167, 1173 (emphasis added) (quoting § 227(a)(1)(A)).[21]  Courts in this and other districts have understandably "recognize[d] the difficulty of alleging details about an ATDS before discovery." *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 U.S. Dist. LEXIS 26778, at *8 (D.N.M. Feb. 20, 2019) (Johnson, C.J.) (permitting "further details [to] be obtained during discovery").[22]  Nevertheless, a complaint must still allege more than "an ATDS was used":

> Although alleging specific details regarding a defendant's use of an ATDS can pose a challenge prior to conducting discovery, courts nonetheless have held that to sustain a claim under the TCPA, a plaintiff must plead more than the bare allegation that an ATDS was used.  In light of these tensions, a plaintiff is permitted to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used.

---

[20] *See also AAPC*, 140 S. Ct. at 2345 (observing that under the TCPA "States may bring civil actions against robocallers on behalf of their citizens" and "the Federal Communications Commission can seek forfeiture penalties for willful or repeated violations of the statute").

[21] The ATDS prohibitions are designed to "target a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." *Facebook*, 141 S. Ct. at 1171.  Consequently, the definition of ATDS does not broadly "encompass any equipment that merely stores and dials telephone numbers." *Id.*  Instead, the definition requires that the telemarketing equipment have "the capacity to use a random or sequential number generator"—as "[such] technology [has] caused unique problems for business, emergency, and cellular lines." *Id.* at 1171–73.

[22] *See, e.g., Callier v. MultiPlan, Inc.*, No. EP-20-CV-00318-FM, 2021 U.S. Dist. LEXIS 256747, at *39 (W.D. Tex. Aug. 26, 2021) (observing that "it is impracticable to expect plaintiffs to plead specific facts about a telemarketer's technological processes before they have the benefit of discovery").

*Escano v. Symmetry Fin. Grp. of N.C., LLC*, No. 2:21-cv-0884 RB-GBW, 2022 U.S. Dist. LEXIS 103654, at *8 (D.N.M. Jun. 9, 2022) (Brack, J.) (quoting *Gonzalez v. HOSOPO Corp.*, 371 F. Supp. 3d 26, 34–35 (D. Mass. 2019)) (citations omitted).

### b.  *Residential Telephone Line*

The TCPA prohibits telephone solicitation to a "residential telephone subscriber."  *See* 47 U.S.C. §§ 227(b)(1)(B), (c); 47 C.F.R. §§ 64.1200(a)(7), (c)(2).[23]  The FCC's policy is that "cellular numbers that [have been] placed on the [Do Not Call] registry [are] presumed to be residential."  *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) (citing In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003)) (finding that plaintiff "properly alleged that his cellphone [was] a residential line" by alleging that he (1) "placed his cellular phone number on the National Do Not Call registry" and (2) "use[d] his cell phone as his residential line").

Furthermore, "a subscriber's use of a residential phone (including a presumptively residential cell phone) in connection with a home-based business does not necessarily take an otherwise residential subscriber outside the protection of § 227(c) [of the TCPA]."  *Chennette v. Porch.Com, Inc.*, __ F.4th __, No. 20-35962, 2022 U.S. App. LEXIS 28354, at *13–21 (9th Cir. Oct. 12, 2022) (citing cases and "agree[ing] with the view of the majority of the district courts and

---

[23]  The NMUPA, N.M. Stat. Ann. §§ 57-12-1 to -26, likewise prohibits such calls to a "residential subscriber."  §§ 57-12-22(C)(1)–(2) (1978); *see also Mohon v. Agentra LLC*, No. CIV 18-0915 JB\KRS, 400 F. Supp. 3d 1189, 1231–34 (D.N.M. 2019) (Browning, J.) (interpreting § 57-12-22(C)(1) and concluding that "the Supreme Court of New Mexico would believe that the NMUPA should work in harmony with the TCPA"); *State ex rel. Schwartz v. Sanchez*, 1997-NMSC-021, 936 P.2d 334, 335 (stating that "two statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals" (quotation omitted)).

conclud[ing] that a presumptively residential cell phone can be residential even when used for both personal and business purposes").[24]

### C.  Rule 12(b)(6) Analysis

As described below, the Court recommends denying RCI, Timescape, and Bradley's joint request that Counts involving an ATDS (Count I and III), a residential phone line (Counts II, IV, VII, XII, and XIII), and § 57-12-22(B)(2) of the NMUPA (Count X) be dismissed under Rule 12(b)(6) for failure to state a claim.

> 1.  The Factual Allegations Plausibly Suggest Defendants Used an Automatic Telephone Dialing System

The Court recommends that Counts I and III not be dismissed because the factual allegations in the Complaint plausibly suggest that Defendants (1) called Plaintiff's cell phone "using [an] [ATDS]," 42 U.S.C. § 227(b)(1)(A)(iii) (Count I); and (2) "use[d] an [ATDS] in such a way that two or more telephone lines of a multi-line business are engaged simultaneously," § 227(b)(1)(D) (Count III).  More specifically, the Complaint plausibly suggests that Defendants made these offending calls using telemarketing equipment that had "the capacity to use a *random or sequential number generator* to either store or produce phone numbers to be called."  *Facebook*, at 1167–73 (emphasis added) (citing § 227(a)(1)(A)).  Indeed, the Complaint pleads significantly more than "the bare allegation that an ATDS was used."  *Symmetry*, No. 21cv884-RB/GBW, 2022 U.S. Dist. LEXIS 103654, at *8.  Specifically, the Complaint alleges the following facts—the

---

[24] *See also Chennette*, ___ F.4th ___, 2022 U.S. App. LEXIS 28354, at *7, 20 (concluding that "[a]t the motion to dismiss stage . . . plaintiffs' phones [were] presumptively residential" when some of the plaintiffs alleged having "*residential* cell phone numbers which they use[d] in their home-based businesses" and which were "on the national do-not-call registry" (emphasis added) (alterations omitted)); *id.* at *20–21 (observing that "[a]fter discovery, defendants may seek to argue that they have rebutted the presumption by showing that plaintiffs' cell phones [were] used to such an extent and in such a manner as to be properly regarded as business rather than 'residential' lines" and discussing factors the court would consider "in determining whether the presumption is rebutted").

totality of which plausibly suggests that Defendants violated the TCPA by using an ATDS to call

Plaintiff:

(1)   Defendants initiated at least twenty-seven telemarketing calls to Plaintiff, ¶ 15;

(2)   the calls were "automatically dialed," *id.*;

(3)   the calls were "unsolicited," *id.*;

(4)   the calls began with similar "pre-recorded messages," ¶¶ 2, 27;

(5)   the calls had their numbers "spoofed" so as to obfuscate the true identity of the caller, ¶ 18; *see also* ¶¶ 88–118 (specifically identifying the numbers from which the calls came);

(6)   the employees were instructed "not to immediately communicate the true name of the company," *id.*;

(7)   Plaintiff's number was on the Do Not Call Registry, which is "available to telemarketers wishing to operate within the law," ¶ 20;

(8)   Plaintiff reported during at least three calls that he "did not want to be called again," ¶ 21;

(9)   Defendants had no "prior business or contractual relationship with Plaintiff," ¶ 33;

(10)   Defendants "used predictive dialer technology.  A predictive dialer is a type of ATDS that, given a set number of phone representatives, "predicts" the maximum number of telephone subscribers that can be called at once in order for the call to be answered within a set period of time by a live phone representative—after a prerecorded message is played." ¶ 59; and

(11)   Defendants agreed to "initiate automatically-dialed calls en-masse to telephone subscribers across the United States." ¶ 63.

Thus, in addition to its description of the ATDS technology Defendants allegedly used,

Plaintiff's complaint alleges (a) his lack of a business relationship with Defendants;

(b) Defendants' efforts to obfuscate their identity (potentially to hide their use of an ATDS); and

(c) his receipt of over twenty-five similar pre-recorded, automated messages from specifically

identified numbers (despite his lack of his consent, his request to not be contacted, and his Do Not

Call registration).  And if Plaintiff lacked any business relationship with Defendants—and was a

Do Not Call registrant who specifically asked Defendants to stop calling—it is plausible that

Defendants used the alleged ATDS (as opposed to a pre-produced list that could, for example, be

filtered through the Do Not Call Registry or a separate list of callers who expressly asked for the calls to stop) to produce or store Plaintiff's number in connection with their telemarketing efforts. In sum, when the above facts are assumed to be true and viewed together, they plausibly suggest that Defendants called Plaintiff using ATDS—i.e., telemarketing equipment with "the capacity to use a random or sequential number generator." *Facebook*, at 1167–73.[25]

> 2. The Factual Allegations Plausibly Suggest Defendants Called a Residential Telephone Line

The Court recommends that Counts II, IV, VII, XII, and XIII not be dismissed because the factual allegations in the Complaint plausibly suggest that Defendants made prohibited telephone solicitations to Plaintiff's "residential" phone line.  Although the Complaint does not use the word "residential" to describe his cell phone, the omission of this adjective is not fatal.  *See*, *e.g.*, *Iqbal*, 556 U.S. at 678-79 (observing that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era"); *Tellabs*, 551 U.S. at 319 (observing that "the complaint must say enough to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quotation omitted)).

Indeed, the Complaint alleges facts that plausibly suggest Plaintiff's cell phone qualifies as "residential" under the applicable statutes.  *See supra* Section IV(B)(2)(b) & note 23 (referencing the applicable TCPA and state statutes and their similar requirements for "residential"

---

[25] *See also Symmetry*, 2022 U.S. Dist. LEXIS 103654, at *8–15 (finding that "[the] allegations [were] sufficient to raise a plausible inference that [d]efendants used an ATDS and to put [d]efendants on notice of [plaintiff's] claims" when plaintiff (1) "alleged that he did not have a business relationship with [d]efendants, and he did not consent to be called by them"; (2) "specifie[d] the phone numbers from which he was called and generally describes the content of the calls"; and (3) "allege[d] that the calls either began with a prerecorded or artificial message, a digital beeping sound, or at least three seconds of silence before a representative came on the line"); *Camunas v. National Republican Senatorial Committee*, 541 F. Supp. 3d 595, 602 (E.D. Pa. 2021) (observing that "courts permit the allegation of an automatic system to be pled on information or belief, but require additional factual information, such as *the absence of a relationship between the parties* and *the random nature of the automation device*" (emphasis added) (quotation omitted)).

numbers).  Specifically, the Complaint alleges that (1) his cell phone is his "personal property," Compl. at ¶ 164; (2) his cell phone number has been on the Do Not Call Registry "for over a decade," *id.* at ¶ 20; (3) he told the phone representatives several times that "[he] did not want to be called again" and further "requested that his phone number be placed on an internal 'do not call' list," *id.* at ¶ 21; and (3) the calls "disrupted his days," "deprived him of the use and enjoyment of his cell phone," and were "repeated invasions of [his] *privacy* that required him to divert attention away from his work and *personal* life," *id.* at ¶¶ 42–43, 163 (emphasis added).  Furthermore, as his cell phone number is on the Do Not Call Registry, his cell phone is "presumed to be residential."  *Rosenberg*, 435 F. Supp. 3d at 324.

Assuming the above factual assertions to be true, the Court views as highly unlikely that an employer would have issued Plaintiff this phone (or its accompanying number)—especially as Plaintiff describes his phone as his "personal property" and represents that he has had this phone line as part of his "personal life" for over ten years (during which the phone line has also been on the Do Not Call Registry).  And it also seems unlikely that—even if self-employed—Plaintiff would not use his cell phone number of ten years as his "residential" number.  Moreover, Plaintiff's "use of a residential phone (including a presumptively residential cell phone) in connection with a home-based business does not necessarily take an otherwise residential subscriber outside the protection of § 227(c) [of the TCPA]," *Chennette*, __ F.4th __, 2022 U.S. App. LEXIS 28354, at *13–21, or presumably the protection of the similar NMUPA provisions that "should work in harmony with the TCPA," *see supra* note 23.

In recommending that Counts II, IV, VII, XII, and XIII not be dismissed for failure to state claims involving a "residential" phone line, the Court notes that "[a]fter discovery, [Defendants] may [nevertheless] seek to argue that they have rebutted the [residential phone] presumption by

showing that [Plaintiff's] cell phone[ ] [was] used to such an extent and in such a manner as to be properly regarded as [a] business rather than 'residential' line[ ]." *Chennette*, __ F.4th __, 2022 U.S. App. LEXIS 28354, at *20–21.

3.  The Factual Allegations Plausibly Suggest Defendants Misrepresented the Primary Purpose of a Telephone Solicitation

The Court concludes that Count X of the Complaint states a valid claim for a violation of Section 57-12-22(B)(2) of the NMUPA.  This statute provides that "[i]t is unlawful under the Unfair Practices Act for a person to make a telephone solicitation for a purchase of goods or services that misrepresents the primary purpose of a telephone solicitation of a residential subscriber as a 'courtesy call', a 'public service information call' or some other euphemism." N.M. Stat. Ann. 57-12-22(B)(2).

The Court first finds that the Complaint's factual allegations plausibly suggest that Defendants "misrepresent[ed] the primary purpose of [their] telephone solicitation[s]" to Plaintiff. *Id.*   Assuming the veracity of Plaintiff's well-pleaded factual allegations, Defendants' representatives misled the listeners into believing they were receiving something akin to a courtesy call—a call notifying them of their "*entitle*[*ment*] to receive a *complimentary* stay" at well-known, reputable hotels (e.g., Marriott Hotels, Hyatt Hotels, and Hilton Hotels) or hotels affiliated with well-known reputable businesses (e.g., Disney World and Booking.com).  Compl. at ¶¶ 2, 23–25, 44 (emphasis added).  But the Complaint alleges that the real purpose of Defendants' calls had nothing to do with entitlements to complimentary stays at such hotels.  Instead, the ulterior purpose of these calls was to *sell* both (1) "vacation packages" to "*other unrelated* hotels and resorts" (i.e., MXRRU and Timescape-affiliated properties) and (2) "timeshare memberships at [these] resorts and other resorts within RCI's timeshare exchange network."  *Id.* at ¶¶ 19, 44–45, 63 (emphasis added).

29

The Court next finds that the Complaint's factual allegations plausibly suggest that such misrepresentations were made by conveying the primary purpose of the calls as either a "courtesy call" or something closely akin to it  (i.e., a call notifying one of an entitlement to a complimentary stay).  N.M. Stat. Ann. 57-12-22(B)(2).  But even if such a misleading notification could not plausibly amount to a representation that the primary purpose of the call was a "courtesy call"— such a misleading notification surely qualifies as "some *other* euphemism."  *Id.* (emphasis added). In other words, such a misleading notification plausibly amounts to a "phrase used to avoid saying [something] unpleasant or offensive"—with the "unpleasant or offensive" item being the true purpose of the telemarketing calls: to sell "vacations packages" at *Defendants'* properties (conditioned on attendance at timeshare "sales pitch" presentations).  Cambridge Dictionary – Cambridge University Press (2022), dictionary.cambridge.org (defining *euphemism*); *see* Compl. at ¶¶ 19, 44–45, 63, 74.[26]

## V.   RES JUDICATA (ISSUE PRECLUSION AND CLAIM PRECLUSION) DOES NOT BAR PLAINTIFF'S CLAIMS AGAINST TIMESCAPE OR BRADLEY

### A.  Parties' Primary Res Judicata Arguments

Timescape and Bradley argue that Plaintiff's complaint should be dismissed under Rule 12(b)(6) on claim preclusion grounds because "[Timescape] and Bradley were known to Plaintiff at the time of *Escano I* and were included among the unnamed Does 1–100 that were dismissed with prejudice" after the parties in that case settled and filed a stipulation of dismissal.  ECF 50 at 14–16; ECF 55 at 9–13.  These Defendants further argue that, even if the parties in *Escano I* and the instant case are not in privity, "collateral estoppel precludes Plaintiff from relitigating the same 27 phone calls that he did in *Escano I*" because—aside from naming different defendants—the

---

[26] So far as the Court is aware, no reported case has addressed the meaning of N.M. Stat. Ann. § 57-12-22(B)(2), including its use of the phrase "some other euphemism."  Nonetheless, the Court considers the language of the statute to be plain and the ordinary meaning of that language to be just as plain.

factual allegations from the complaints in the two suits are identical.  ECF 50 at 16.  Consequently, because Plaintiff "had a full and fair opportunity to litigate all issues related to [these] 27 telephone calls" in *Escano I*, he cannot reassert claims based on these calls.  *Id.* at 16–17.

In response, Plaintiff contends that the doctrine of claim preclusion does not bar his instant suit because (1) *Escano I* settled and was dismissed pursuant to the parties' stipulation—and thus "never concluded by a judgment on the merits"—and (2) "[n]one of the defendants in the instant case are identical or in privity to any of the defendants in the [*Escano I*] case."  EC 53 at 8–11.[27] Furthermore, Plaintiff argues that collateral estoppel does not bar his claims because there were no issues that were "actually and necessarily decided" in *Escano I* (e.g., the universe of organization that were involved in the alleged telemarketing calls)—particularly as *Escano I* and the instant suit both contemplate the involvement of multiple entities in such calls.  *Id.* at 7–8 (quoting *In re Wallace*, 840 F.2d 762, 764 (10th Cir. 1988)).

### B.  Applicable Res Judicata Legal Standards

Res judicata is "a term that now comprises two distinct doctrines regarding the preclusive effect of prior litigation."  *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020).  "The first is issue preclusion (sometimes called collateral estoppel), which precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment."  *Id.*  "The second doctrine is claim preclusion (sometimes itself called res judicata). Unlike issue preclusion, claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated."  *Id.*

---

[27] Plaintiff also argues that Timescape and Bradley's res judicata defense is brought in bad faith because the defendant in *Escano I* (who was also represented by Timescape and Bradley's attorney) did not agree in the stipulation of dismissal to allow Plaintiff to "expressly reserve the right, in the stipulation of dismissal, to file new claims against [the *Escano I*] Doe defendants."  ECF 53 at 11–12.  In addition, Plaintiff argues that claim preclusion does not bar his suit because the instant case was filed on April 4, 2022—while the parties' stipulation of dismissal in *Escano I* was not filed until April 6, 2022.  *Id.* at 12–13.

1.  Issue Preclusion

"It is the general rule that issue preclusion attaches only 'when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'" *Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement (Second) of Judgments § 27, p. 250 (1982)). Issue preclusion thus "bars successive litigation of [1] *an issue of fact or law* [2] *actually litigated and resolved* in a valid court determination [3] *essential* to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (emphasis added) (quotation omitted); *see also Arizona*, 530 U.S. at 414 ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." (quotation omitted)). Essentially, "[t]he doctrine of issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit." *In re Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009).[28]

2.  Claim Preclusion

Claim preclusion applies "when there is '(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.'" *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1271 (10th Cir. 2022) (quoting *Johnson v. Spencer*, 950 F.3d 680, 693 (10th Cir. 2020)). Regarding the first factor, "a judgment 'on the merits' triggers the doctrine of res judicata or claim preclusion" when the "adjudication is one that actually passes directly on the substance of a particular claim before the court." *Semtek*

---

[28] In other words, "issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1050 (10th Cir. 2021) (quotation omitted). "In the civil context, four criteria must be met before a court may apply the doctrine of issue preclusion: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Id.* (quotation omitted).

*Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501–02 (2001) (quotation and alteration omitted); *see*, *e.g.*, *Brownback v. King*, 141 S. Ct. 740, 748 (2021) (concluding that a district court's summary judgment ruling was "claim preclusive" because it "passed directly on the substance" of a plaintiff's claims—i.e., the ruling "hinged on a quintessential merits decision: whether the undisputed facts established all the elements of" a plaintiff's claims).

Furthermore, "[a] stipulation of dismissal with prejudice normally constitutes a final judgment on the merits." *Pedrera Sanchez v. Crocs, Inc.*, 667 Fed. Appx. 710, 716 (10th Cir. 2016) (unpublished) (alterations omitted) (quoting *Astron Indus. Assocs., Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 960 (5th Cir. 1968)) (citing *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004)).  But there is an "important distinction between [the] res judicata effect of previously litigated case and [the] res judicata effect of [a] settlement agreement." *Weller v. HSBC Fin. Corp.*, 187 F. Supp. 3d 1263, 1267 (D. Colo. 2016) (citing *Norfolk Southern Corp,* 371 F.3d at 1289).  Specifically, "[a] judgment dismissing an action with prejudice based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimating force from the fact that the parties consented to it." *Norfolk Southern Corp*, 371 F.3d at 1289.  Thus, "[w]here the parties consent to such a dismissal based on a settlement agreement, . . . the principles of res judicata apply . . . *to the matters specified in the settlement agreement*." *Id.* (emphasis added).[29]  In other words, "the preclusive effect *vel non* of the Settlement Agreement is governed by reference to the terms of the agreement itself, *not by the*

---

[29] *See also Denver Homeless*, 32 F.4th at 1271 (noting that "settlements have claim-preclusive effect between *the parties to the settlement*" (emphasis added) (quotation omitted)); *Arizona*, 530 U.S. at 414 (noting that "settlements ordinarily occasion no issue preclusion . . . unless it is clear . . . that the parties intend their agreement to have such an effect").

*claims asserted in the complaint*." *Weller*, 187 F. Supp. 3d at 1267 (citing *Norfolk Southern Corp*, 371 F.3d at 1289) (emphasis added).[30]

The second claim preclusion factor "[g]enerally . . . requires that the named parties in the first and second suits be *identical*." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1240 (10th Cir. 2017) (emphasis added). "Thus, even where a plaintiff has already sued one or more parties liable for a particular loss, the plaintiff ordinarily is entitled to bring another suit against a new defendant, or defendants, based on the same loss." *Id.*[31] "At a minimum, privity requires a showing that the parties in the two actions are really and substantially in interest *the same*." *Id.* (quotations omitted) (emphasis added) (finding privity when the plaintiff's claims "treat[ed] [the two defendants] as a *single entity*" (emphasis in original)).

Regarding the third factor, "a cause of action is identical for res judicata purposes if it arises out of the same event or series of events which concluded in a valid and final judgment." *Denver Homeless*, 32 F.4th at 1274; *see also Lucky*, 140 S. Ct. at 1594 (observing that "[s]uits involve the same claim (or 'cause of action') when they arise from the same transaction or involve a common nucleus of operative facts" (quotations and alterations omitted).

## C.  Res Judicata Analysis

The Court first concludes that the doctrine of issue preclusion does not bar Plaintiff from suing Defendants based on "the same 27 phone calls that he did in *Escano I*." ECF 50 at 16–17.

---

[30] *See also Norfolk Southern Corp,* 371 F.3d at 1288–89 (observing that (1) "[t]he expressed intent of the parties is . . . the determining factor" in assessing the preclusive effect of "a consent-based judgment" and (2) "the party pleading [res judicata] [must] prove[ ] from the record of the prior case or through extrinsic evidence that the parties intended the consent judgment to operate as a final adjudication of a particular issue" (quotation and citation omitted)).

[31] *See also Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008) ("It is a fundamental rule of civil procedure that one who was not a party to an action is not bound by the judgment."); *United States v. Lacey*, 982 F.2d 410, 412 (10th Cir. 1992) (observing that "[a] judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor"—because "the claim against others who are liable for the same harm is regarded as separate" (quotation omitted)).

As is readily apparent from even a cursory review of *Escano I*, there was no "[1] issue of fact or law [2] actually litigated and resolved in a valid court determination [3] essential to the [*Escano I* court's] judgment." *Taylor*, 553 U.S. at 892 (quotation omitted); *see* ECFs 1–19 (22cv58) (comprising the entire *Escano I* docket, from its January 2022 removal to Judge Browning's April 2022 final judgment). Indeed, *Escano I* settled approximately two months after its removal and with no decision on the one dispositive motion filed in that case (i.e., Holidays' motion to dismiss for lack of personal jurisdiction). *See* ECFs 1, 6, 18 (22cv58). Thus, Plaintiff has not "suffered an adverse determination on [a particular] issue" in *Escano I* such that this Court must now prohibit the re-litigation of that issue. *Hetronic Int'l*, 10 F.4th at 1050. Consequently, Plaintiff is not barred from litigating issues related to the alleged telemarketing calls that are now at issue in this case.

The Court also concludes that the doctrine of claim preclusion does not bar Plaintiff from pursuing the instant lawsuit. To begin, *Escano I* did not conclude with a claim-preclusive "final judgment on the merits," *Denver Homeless*, 32 F.4th at 1271—i.e., a final judgment "that actually passe[d] directly on the substance of a particular claim before the [*Escano I*] court." *Semtek Int'l*, 531 U.S. at 501–02 (quotation and alteration omitted); *see also id.* at 502—03 (illustrating that a "judgment on the merits" that does not "pass upon the substantive merits of a claim" is not "necessarily entitled to claim-preclusive effect"). Although *Escano I* concluded with a settlement and a voluntary stipulation of dismissal with prejudice under Rule 41(a)(A)(A)(ii)—which authorizes dismissal of a case "without a court order"—and Judge Browning's "final judgment" three weeks later, *Escano I* contained *no* rulings that ever "passe[d] directly on the substance of a particular claim." *Id.* at 501–02; *see* ECFs 1–19 (22cv58) (*Escano I* docket). Therefore, *Escano I* contains no final judgment on the merits that would now "prevent[ ] [Plaintiff] from raising issues

that could have been raised and decided in [*Escano I*]." *Lucky Brand Dungarees*, 140 S. Ct. at 1594.[32]

Furthermore, although Plaintiff and Holidays' confidential (and undisclosed) settlement agreement in *Escano I* may have a "claim-preclusive effect between *the parties to* [*that*] *settlement*," *Denver Homeless*, 32 F.4th at 1271 (emphasis added)—regarding "matters specified in [that] settlement," *Norfolk Southern Corp.*, 371 F.3d at 1289—Timescape and Bradley do not assert claim preclusion based on that settlement agreement. Thus, the Court need not assess "the preclusive effect *vel non* of [Plaintiff and Holidays'] Settlement Agreement" with respect to the instant case. *Weller*, 187 F. Supp. 3d at 1267.

In sum, the Court concludes that res judicata (issue preclusion and claim preclusion) does not bar Plaintiff's claims.

## VI. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Court:

(1) **GRANT IN PART** MXRRU'S Motion to Dismiss [ECF 7] by **DISMISSING** from this litigation the call allegedly made on February 8, 2018 [ECF 1-1 at ¶ 88–89] as barred by the statute of limitations;

(2) **GRANT IN PART** RCI's Motion to Dismiss [ECF 42] and Timescape and Bradley's Motion to Dismiss [ECF 50] by **DISMISSING WITH PREJUDICE** Counts Five and Six of the Complaint [ECF 1-1 at ¶¶ 131–36]; and

---

[32] Because the Court concludes that the first claim preclusion factor ("a final judgment on the merits in an earlier action") has not been satisfied, the Court need not address the second factor ("identity of parties or privies in the two suits"). *Denver Homeless*, 32 F.4th at 1271. Nevertheless, the Court observes that this second factor "[g]enerally . . . requires that the *named* parties in the first and second suits be *identical*." *Lenox MacLaren*, 847 F.3d at 1240 (emphasis added)—and that none of the named defendants in *Escano I* (Holidays and Jorge Bravo) are identical to the named Defendants in the instant case (RCI, Timescape, Bradley, and MXRRU). Furthermore, Timescape and Bradley have not presented sufficiently persuasive (or binding) authority or justifications for this Court to conclude that—in light of the Doe 1–100 defendants in *Escano I*—"the parties in the two actions are really and substantially in interest *the same*." *Id.* (quotations omitted) (emphasis added); *see* ECFs 50 at 15–16; 55 at 10–11; *see also Lenox MacLaren*, 847 F.3d at 1240 (observing that "even where a plaintiff has already sued one or more parties liable for a particular loss, the plaintiff ordinarily is entitled to bring another suit against a new defendant, or defendants, based on the same loss").

(3) otherwise **DENY** the motions to dismiss [ECFs 7, 42, 50].[33]

**SO RECOMMENDED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.

---

[33] As previously noted at *supra* note 4, the Court also recommends **GRANTING** Timescape's Request for Judicial Notice [ECF 51].