## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RUBEN ESCANO,

      Plaintiff,

v.

RCI, LLC, a Delaware Corporation;
TIMESCAPE RESORTS, LLC, a Florida
Limited Liability Company, d/b/a CALYPSO
CAY RESORT; STEPHEN BRADLEY, an
individual; MEXICAN RIVIERA RESORTS
UNLIMITED S.A. DE C.V., CO., a Country of
Mexico Corporation, d/b/a SUNSET WORLD
GROUP; and JOHN DOES 1–10,

      Defendants.

Case No. 2:22-cv-00360-DHU-GJF

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Ruben Escano, undersigned, and for his causes of action against

the Defendants states and alleges as follows:

### Nature of the Case

1.    This civil action is brought forth in accordance with the United States Telephone

Consumer Protection Act ("TCPA"), codified as 47 U.S.C. § 227, and the New Mexico Unfair

Practices Act ("NMUPA"), codified as N.M. Stat. Ann. § 57-12, to, *inter alia*, recover statutory

damages for automatically-dialed and unsolicited telemarketing calls, and to enjoin such calls.

2.    All of the telemarketing calls began with deceptive pre-recorded messages, typified

by one such message: "Thank you for choosing Marriott Hotels!  We would like to inform you

that your confirmation number was drawn and you are entitled to receive a complimentary stay!"

3.      In enacting the TCPA, "Congress reported, '[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) at *3 (quoting TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)) (alterations in original).

<u>**The Parties**</u>

4.      Plaintiff RUBEN ESCANO is an individual and resident of Silver City, New Mexico, with a mailing address of 2311 Ranch Club Road, #2-180, Silver City, New Mexico 88061.

5.      Defendant RCI, LLC ("RCI") is a limited liability company, organized under the laws of Delaware, with a principal address of 6277 Sea Harbor Drive, Orlando, Florida 32821.  Its registered agent is Corporation Service Company at the address of 1207 Hays Street, Tallahassee, Florida 32301.  RCI is a timeshare exchange company.

6.      Defendant Timescape Resorts, LLC ("Timescape") is a limited liability company, organized under the laws of Florida, with a principal address of 4951 Calypso Cay Way, Kissimmee, Florida, 34746.  Its registered agent is the Law Office of M.A. Stone at the address of 14142 Amelia Island Way, Orlando, Florida 32828.  Timescape does business as Calypso Cay Resort.  Timescape owns and operates the Calypso Cay Resort which is located in Kissimmee, Florida.

7.      Defendant Stephen Bradley is a natural person who resides at 29 Royal Fern Way, Santa Rosa Beach, Florida 32459.  He owns and operates Timescape.

8.      Defendant Mexican Riviera Resorts Unlimited S.A. De C.V., Co. ("MXRRU") is a for-profit corporation organized under the laws of the Country of Mexico, with a principal address of Boulevard Kukulkan Km 10 Lote Bb Zona Hote, Cancun Quintana Roo, Mx 77500, Mexico.

Its registered agent in the United States is Cove Law P.A. at the address of 1300 SE 4th Avenue, #1, Fort Lauderdale, Florida 33316.  MXRRU does business as Sunset World Group.  It owns and operates a group of hotels and resorts in and near Cancun, Mexico, all operating under the Sunset World Group brand.

9.      Defendant John Does 1–10 are individuals or entities that are directly or vicariously liable for the causes of action alleged herein, but whose identities or liabilities are not yet fully known.  Plaintiff reserves the right to amend this complaint once information arises to properly implicate these parties in the causes of actions alleged herein.

## Jury Demand

10.     A trial by jury on all claims is hereby demanded.

## Jurisdiction

11.     Plaintiff is a resident of New Mexico and was in New Mexico at the time a preponderance of the calls described herein were received.

12.     The Defendants relied on and availed themselves of the telecommunications infrastructure of New Mexico when transmitting the calls in question.

13.     Defendants offer and market their products or services to residents of New Mexico using means which they know could reach residents of New Mexico, and in the manner in which Defendants offered and marketed their products or services to Plaintiff as alleged herein.

14.     Jurisdiction is proper under 47 U.S.C. § 227(b)(3) and § 227(c)(5).

## Causes of Action

### Introduction

15.     Beginning February 8, 2018 and continuing to January 20, 2021 MXRRU and Timescape initiated at least twenty-seven automatically-dialed and unsolicited telephone calls (hereinafter, "the calls") to Plaintiff's cell phone, which has a phone number ending in -8938.

16.     MXRRU and Timescape made such calls as part of a joint enterprise, and on behalf of and under the direct, implied, or apparent authority of RCI.

17.     At all times relevant, Timescape acted under the direction and control of Mr. Bradley.  Mr. Bradley is also an employee of Timescape.

18.     During the calls, MXRRU and Timescape attempted to avoid legal reproach by "spoofing" the phone numbers from which it called so that Plaintiff's cell phone, and any other telephones called, would show inaccurate caller ID information, and by instructing their employees not to immediately communicate the true name of the company calling even when Plaintiff, and any other telephone subscribers that were called, inquired as to the true name of the company.

19.     All of the calls were made in an attempt to sell vacation packages and timeshares for the Calypso Cay Resort in Kissimmee, Florida, or Sunset World Group resorts in or near Cancun, Mexico

20.     Plaintiff's cell phone number, ending in -8938, has been listed on the Federal Trade Commission's National Do Not Call Registry for over a decade.  The FTC's National Do Not Call Registry is available to telemarketers wishing to operate within the law.

21.     During at least four of the calls, including the very first call on February 8, 2018, Plaintiff told an MXRRU or Timescape phone representative that Plaintiff did not want to be called

again.  All three times, he requested that his phone number be placed on an internal "do not call" list.

22.    Undeterred, MXRRU and Timescape continued calling Plaintiff.

23.    The calls began with various pre-recorded messages deceptively announcing the calls as coming from "Marriott Hotels," "Hyatt Hotels," "Hilton Hotels," "Disney World," or "Booking.com."

24.    In addition to the pre-recorded message alleged in ¶ 2—which commenced a preponderance of the calls—other pre-recorded messages stated, for example:

    a)  "This is an exclusive announcement from Hyatt Hotels!  Your telephone number has been pre-selected to receive a complimentary stay in one of our five-star hotels!"

    b)  "Congratulations! You have been pre-selected by Booking.com to receive a $999 credit toward your next vacation!"

    c)  "Thank you for choosing Hilton Hotels!  We would like to inform you that your booking number was chosen for a complimentary stay!"

25.    MXRRU and Timescape referenced these well-known names and trademarks, to legitimize their scheme.

26.    None of the companies that own such trademarks actually transmit calls with such pre-recorded messages.

27.    All of the pre-recorded messages were made with the same woman's voice and with similar excited intonations and cadence.

28.     The content of all of the calls in the instant case, and their associated pre-recorded messages, was substantially similar enough that a reasonable person would identify the calls as coming from the same entity.

29.     During the calls, Defendants violated at least ten distinct prohibitions, proscribed by the TCPA, at least 243 times, specifically: 47 U.S.C § 227(b)(1)(A)(iii), § 227(b)(1)(B), § 227(b)(1)(D),      47 C.F.R. § 64.1200(a)(7)(i),      § 64.1200(b)(1),      § 64.1200(b)(2),      and § 64.1200(c)(2), § 64.1200(d)(1)-(2), § 64.1200(d)(3), and § 64.1200(d)(4).

30.     Defendants also violated at least six distinct prohibitions of the NMUPA at least 162 times, specifically: N.M. Stat. Ann. §§ 57-12-22(A), 57-12-22(B)(1), 57-12-22(B)(2), 57-12-22(B)(7), 57-12-22(C)(1), and 57-12-22(C)(2).

31.     Plaintiff alternatively alleges that a John Doe Defendant partnered with MXRRU and Timescape as part of their joint telemarketing enterprise, and that the three-member joint enterprise also operated on behalf of and under the direct, implied, or apparent authority of RCI.

32.     Plaintiff also alternatively alleges that, in the event a John Doe Defendant was not a part of the joint enterprise, a John Doe Defendant acted as an agent of MXRRU, Timescape, and RCI in furtherance of MXRRU and Timescape's joint telemarketing enterprise.

**Relevant Facts and Law**

33.     At no time, during the period in question, did Defendants have any prior business or contractual relationship with Plaintiff.

34.     Accordingly, Defendants did not have an "established business relationship," as defined by 47 C.F.R. § 64.1200(f)(6) and N.M. Stat. Ann. § 57-12-22(D)(1)(a), with Plaintiff.

35.     The calls were initiated for the purpose of encouraging the purchase of goods or services.

36.    Defendants have not received from Plaintiff any prior express invitation or permission to call him.

37.    Accordingly, the calls meet the definition of a "telephone solicitation" under 47 U.S.C. § 227(a)(4) and N.M. Stat. Ann. § 57-12-22(D)(4).

38.    In transmitting the calls, Defendants utilized equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

39.    Accordingly, the equipment utilized was an "automatic telephone dialing system" (hereinafter, "ATDS") as defined by 47 U.S.C. § 227(a)(1).

### Concrete Injury

40.    The calls caused Plaintiff concrete injuries in fact.

41.    The calls caused a partial depletion of the charge of Plaintiff's cell phone's battery, a partial depletion of the lifespan of the LED backlight of the phone's display, and unwarranted wear and tear for at least both of those components.

42.    The calls aggravated Plaintiff, disrupted his days, and required him to divert attention away from his work and personal life to tend to and answer such unwarranted intrusions of his time.

43.    Accordingly, the calls were repeated invasions of Plaintiff's privacy that required him to divert attention away from his work and personal life to tend to and answer such intrusions of his time.

### Mexican Riviera Resorts Unlimited and Calypso Cay Resorts

44.    Although the calls began with pre-recorded messages announcing the calls as coming from well-known hotel brands, such as "Marriott" and "Hyatt," the phone representatives

to whom Plaintiff spoke during the calls, attempted to sell Plaintiff vacation packages at other unrelated hotels and resorts.

45.    All of the vacation packages that the phone representatives attempted to sell to Plaintiff were for stays at either (a) the Calypso Cay Resort, located in Kissimmee, Florida, or (b) hotels and resorts operating under the Sunset World Group brand, including "Laguna Suites Golf and Spa Hotel" and "Ocean Spa Hotel," located in or near Cancun, Mexico.

46.    During at least one call, including the August 24, 2020 call, a phone representative offered Plaintiff a 4-person vacation package to Calypso Cay Resorts for $999.

47.    Additionally, during the April 3, 2018 call, and because that call began with a pre-recorded message announcing the call as coming from "Marriott Hotels," Plaintiff attempted to determine the true provenance of the call.  To that end, Plaintiff gave his credit card information to a phone representative who said he was located in Cancun, Mexico.  The phone representative charged Plaintiff's credit card for a vacation package and provided Plaintiff with a customer service phone number.

48.    Plaintiff's credit card statement showed a subsequent charge from a vendor called "MXRRU" with an address in Cancun, Mexico.

49.    Only two days after the April 3, 2018 call, on April 5, 2018, Plaintiff called the customer service phone number that was provided to him by the phone representative from the April 3, 2018 call.  During the call to the customer service phone number, Plaintiff clearly and unequivocally told a customer service agent that he did not wish to be called again and that he did not have any interest in any vacation packages.  He also requested that the credit card charge be refunded.

50.    The customer service agent did not refund the credit card charge.

51.     Plaintiff had to file a dispute with his credit card company who refunded the charge.

52.     The TCPA and its prohibitions apply, inclusively, to telemarketing calls transmitted from outside the United States. *See* 47 U.S.C § 227(b)(1).

53.     Mr. Bradley directed Timescape employees to place the calls, in the manner as alleged in the counts *infra*, and controlled such employees throughout and at all times during the counts *infra*. On behalf of Timescape, Mr. Bradley entered into agreements with MXRRU and RCI to transmit the calls.

54.     Mr. Bradley manifested assent to his right to control the Timescape employees.

55.     Accordingly, Mr. Bradley is vicariously liable for the calls under the theory of respondeat superior.

## A Joint Enterprise Between MXRRU and Timescape

56.     MXRRU and Timescape united to set up, direct, and control a telemarketing operation together. MXRRU and Timescape's telemarketing operation, which resulted in the calls alleged herein, was a joint enterprise.

57.     MXRRU and Timescape acted as agents of each other.

58.     MXRRU operated a call center in Mexico as part of the joint enterprise, while Timescape operated a call center in Florida as part of the joint enterprise.

59.     MXRRU and Timescape's telemarketing operation used predictive dialer technology. A predictive dialer is a type of ATDS that, given a set number of phone representatives, "predicts" the maximum number of telephone subscribers that can be called at once in order for the call to be answered within a set period of time by a live phone representative— after a prerecorded message is played.

60.    MXRRU and Timescape both initiated calls from their respective call centers.  But if an MXRRU phone representative in Mexico was not available to speak to a telephone subscriber for a call initiated from MXRRU's call center, the call was transferred to a Timescape phone representative in Florida, who attempted to sell a vacation package at MXRRU's resorts on behalf of MXRRU, and vice-versa.  Through such procedure, MXRRU and Timescape shared their call center employees in a pre-planned and seamless arrangement in order to maximize the number of telephone subscribers they could reach.

61.    During the August 3, 2018 call, Plaintiff initially spoke to a phone representative—who was a Timescape phone representative—who said she was located in Orlando, Florida.  After a 45-minute sales pitch, Plaintiff was then transferred to an MXRRU phone representative who said he was located in Mexico, to finalize payment for the vacation package.  And as alleged *supra*, that phone representative subsequently charged Plaintiff's credit card, and Plaintiff's credit card indicated the charge was from MXRRU.

62.    Separately, during the August 24, 2020 call described *supra*, Plaintiff spoke with a phone representative who said he was located in Mexico.  However, that representative—who was an MXRRU phone representative—attempted to sell Plaintiff a vacation package at the Calypso Cay Resort in Florida.

63.    MXRRU and Timescape entered into an agreement with each other to initiate automatically-dialed calls en-masse to telephone subscribers across the United States in an attempt to sell (a) *vacation packages* for their resorts and (b) *timeshare memberships* at their resorts and other resorts within RCI's timeshare exchange network.

64.    MXRRU and Timescape combined their money, property, and/or time as part of their telemarketing operation.   Specifically, MXRRU and Timescape used such combined

resources to purchase call center equipment, including automatic-dialing equipment, computers, phones, headsets, and blocks of telephone numbers, which they used during their telemarketing operation.

65.    MXRRU and Timescape also combined such resources to pay for call center offices, and manage and compensate call center employees, including the call center employees Plaintiff spoke to on the phone, as alleged herein.

66.    MXRRU and Timescape also combined their time to craft, manage, and adjust their telemarketing operation in continual reaction to market trends and changing legal liability. Specifically, MXRRU and Timescape combined their time to craft scripts for the prerecorded messages alleged herein and the scripts for their call center employees.  Additionally, MXRRU and Timescape combined their time to develop methods to avoid legal reproach for their telemarketing operation.

67.    MXRRU and Timescape agreed to share in profits and losses of the telemarketing operation, and indeed did.  MXRRU and Timescape each invested significant capital to establish their joint telemarketing operation and would not have done so if those investments did not bear fruit from the joint enterprise.

68.    Due to those significant investments, MXRRU and Timescape had the right of mutual control over the telemarketing operation.

69.    MXRRU and Timescape financially benefited from this joint enterprise.

**MXRRU and Timescape: Operating as agents of RCI**

70.    RCI owns, manages, and operates a timeshare exchange network.  This exchange network allows owners of timeshares at any of the resorts within RCI's network to exchange their timeshare for a timeshare at another resort within the network.  These owners are thus also called

"members" of RCI's timeshare exchange network.  The value of RCI's business thus increases incrementally with every new person (or member) that buys a timeshare at a resort within RCI's timeshare exchange network.

71.    MXRRU and Timescape own and operate resorts within RCI's timeshare exchange network.  Phone representatives attempted to sell Plaintiff vacation packages at these resorts during the calls.

72.    MXRRU and Timescape financially benefited from being a part of RCI's timeshare exchange network.  Indeed, Timescape's website states that RCI is:

> critical to our clubs [sic] success and the ability to trade your week for other great destinations is very important. We made the decision to affiliate with RCI due to the outstanding quality and number of resorts they offer our members. Bigger is better in this case!"

*Members*,    Calypso    Cay    Resort,    https://www.calypsocay.com/members/    archived    at https://perma.cc/UCV2-HU3G.    Timescape's website continues, in reference to RCI and its timeshare exchange network: "With over 4000 resorts in over 100 countries worldwide, they confirm millions of trades every year." *Id.*

73.    RCI also financially benefited from MXRRU and Timescape being a part of its timeshare exchange network and the new members MXRRU and Timescape brought into RCI's timeshare exchange network from the joint telemarketing operation.  Indeed, RCI awarded the Chief Executive Officer of MXRRU, a man named Orlando Arroyo, with their "President's Award" two years in a row.  In a press release, RCI stated that Mr. Arroyo was given the award in "recognition of the amount of business that Sunset World's vacation clubs have generated for RCI." *Sunset World Group Reaffirms its Leadership in the Vacation Industry Receiving Various Recognitions from RCI*, Perspective Magazine,  https://perspectivemagazine.com/2108202014701 archived at https://perma.cc/AZG8-J44X.

74.      As a condition of purchasing the vacation packages attempting to be sold to Plaintiff during the calls, the MXRRU and Timescape phone representatives required that Plaintiff attend a tour and presentation during Plaintiff's stay at the resort for the respective vacation package (i.e., a vacation package at either a Sunset World Group resort or the Calypso Cay Resort).

75.      Upon information and belief, the tour and presentation would consist of a sales pitch to entice Plaintiff to buy a timeshare at the respective resort for the vacation package.

76.      During at least one of the calls, a phone representative stated, "We are the marketing division of RCI."

77.      RCI authorized MXRRU and Timescape phone representatives to represent themselves as RCI employees.

78.      Accordingly, RCI is vicariously liable for the calls under the theory of apparent authority.

79.      Plaintiff alternatively alleges that RCI is directly liable for the calls because RCI was a part of the joint enterprise as indicated by at least one phone representative stating that he was part of the "marketing division" of RCI.  To the fullest extent possible, all facts alleged as to the joint enterprise between MXRRU and Timescape are also hereby alleged to include RCI.

80.      RCI was at all relevant times aware of Timescape and MXRRU's marketing activities.

81.      Nonetheless, RCI awarded MXRRU's phone representatives, who operate within and as part of the joint enterprise, with sales awards, including sales awards that RCI calls "Top Seller," "Alpha," and "Diamond" awards.

82.      Accordingly, RCI is vicariously liable for the calls because they were transmitted in a manner as alleged in the counts *infra* with the ratification of RCI.

83.     At all times relevant, MXRRU, Timescape, and Mr. Bradley were operating on behalf of, to the benefit of, at the direction of, under control of, and as agents of RCI.

### Spoofed Phone Numbers

84.     One of the phone numbers that MXRRU and Timescape spoofed happened to belong to Johnson & Johnson—the manufacturer of one of the COVID-19 vaccines authorized by the FDA, through an Emergency Use Authorization, during the ongoing global COVID-19 pandemic which has killed over one million Americans.

85.     During the December 21, 2020 call alleged *infra*, MXRRU and Timescape spoofed Johnson & Johnson's phone number of 908-541-3210.

86.     Because MXRRU and Timescape spoofed a phone number belonging to Johnson & Johnson, the caller ID of Plaintiff's cell phone erroneously indicated that the call was from "Johnson and Johnson." As a result of MXRRU and Timescape spoofing Johnson & Johnson's phone number, Plaintiff thought the call was an important medical message regarding his eligibility for a COVID-19 vaccine, which had just begun to be distributed to the public.

87.     Instead, Plaintiff was met with a pre-recorded message from MXRRU and Timescape purporting to be from "Marriott Hotels."

### The Calls and The Requests to Stop Calling

88.     On February 8, 2018, MXRRU and Timescape called Plaintiff from the phone number 201-521-5415.

89.     During that February 8, 2018 call, Plaintiff clearly and unequivocally told an MXRRU or Timescape phone representative that he did not want to be called again and to place his phone number on a "do not call" list.

---

90.     On April 3, 2018, MXRRU and Timescape called Plaintiff from the phone number 201-528-7816.

91.     On April 16, 2018, MXRRU and Timescape called Plaintiff from the phone number 201-529-3292.

92.     On April 23, 2018, MXRRU and Timescape called Plaintiff from the phone number 201-528-1389.

93.     On May 1, 2018 MXRRU and Timescape called Plaintiff from the phone number 201-526-8696.

94.     During that May 1, 2018 call, Plaintiff clearly and unequivocally told an MXRRU or Timescape phone representative that he did not want to be called again and to place his phone number on a "do not call" list.

95.     On May 3, 2018 MXRRU and Timescape called Plaintiff from the phone number 201-525-8022.

96.     During that May 3, 2018 call, Plaintiff clearly and unequivocally told an MXRRU or Timescape phone representative that he did not want to be called again and to place his phone number on a "do not call" list.

97.     On May 8, 2018, MXRRU and Timescape called Plaintiff from the phone number 201-528-1795.

98.     On May 14, 2018 at about 4:33 pm, MXRRU and Timescape called Plaintiff from the phone number 201-528-1795.

99.     Again on May 14, 2018, at about 7:41 pm, MXRRU and Timescape called Plaintiff from the phone number 201-524-4967.

100.    On January 29, 2019, MXRRU and Timescape called Plaintiff from the phone number 201-713-1987.

101.    On February 18, 2019, MXRRU and Timescape called Plaintiff from the phone number 201-762-8638.

102.    On May 1, 2019, MXRRU and Timescape called Plaintiff from the phone number 201-714-2552.

103.    On June 3, 2019, MXRRU and Timescape called Plaintiff from the phone number 201-843-1285.

104.    On June 4, 2019, MXRRU and Timescape called Plaintiff from the phone number 201-272-7944.

105.    On July 4, 2019, MXRRU and Timescape called Plaintiff from the phone number 201-301-4631.

106.    On August 19, 2019, MXRRU and Timescape called Plaintiff from the phone number 201-792-3354.

107.    On September 10, 2019, MXRRU and Timescape called Plaintiff from the phone number 201-639-9685.

108.    During that September 10, 2019 call, Plaintiff clearly and unequivocally told an MXRRU or Timescape phone representative that he did not want to be called again and to place his phone number on a "do not call" list.

109.    On June 24, 2020, MXRRU and Timescape called Plaintiff from the phone number 862-232-8428.

110.    On August 24, 2020, MXRRU and Timescape called Plaintiff from the phone number 210-485-6008.

111.     On September 30, 2020, MXRRU and Timescape called Plaintiff from the phone number 973-246-2203.

112.     On October 13, 2020, MXRRU and Timescape called Plaintiff from the phone number 201-284-1653.

113.     On December 2, 2020, MXRRU and Timescape called Plaintiff from the phone number 201-768-7529.

114.     On December 10, 2020, MXRRU and Timescape called Plaintiff from the phone number 973-617-3239.

115.     On December 21, 2020, MXRRU and Timescape called Plaintiff from the phone number 908-541-3210.

116.     On January 4, 2021, MXRRU and Timescape called Plaintiff from the phone number 609-653-2597.

117.     On January 6, 2021, MXRRU and Timescape called Plaintiff from the phone number 973-776-5650.

118.     On January 20, 2021, MXRRU and Timescape called Plaintiff from the phone number 908-478-6380.

## <u>Counts</u>

### COUNT ONE
### Violations of 47 U.S.C. § 227(b)(1)(A)(iii): Utilizing an ATDS to transmit a telephone call to a cell phone.

119.     Paragraphs 1–118 are hereby incorporated by reference.

120.     When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape willfully or knowingly utilized an ATDS to do so.

121.   In so doing, Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1)(A)(iii).

## COUNT TWO
**Violations of 47 U.S.C. § 227(b)(1)(B): Utilizing an artificial or prerecorded voice to deliver a message to a telephone.**

122.   Paragraphs 1–118 are hereby incorporated by reference.

123.   When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape willfully or knowingly utilized an artificial or prerecorded voice to deliver a message to Plaintiff's phone.

124.   In so doing, Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1)(B).

## COUNT THREE
**Violations of 47 U.S.C. § 227(b)(1)(D): Using an ATDS in such a way that two or more telephone lines of a multi-line business are engaged simultaneously.**

125.   Paragraphs 1–118 are hereby incorporated by reference.

126.   When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape willfully or knowingly utilized an ATDS in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

127.   In so doing, Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1)(D).

## COUNT FOUR
**Violations of 47 C.F.R. § 64.1200(a)(7)(i): Allowing a more than two-second delay before responding to answered call.**

128.   Paragraphs 1–118 are hereby incorporated by reference.

129.   When MXRRU and Timescape called Plaintiff's cell phone on May 14, 2018 at about 4:33 pm, MXRRU and Timescape willfully or knowingly allowed more than two seconds of silence before responding to Plaintiff's completed greeting.

130.    In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(a)(7)(i).

## COUNT FIVE
### Violations of 47 C.F.R. § 64.1200(c)(2): Calling a telephone number on the Federal Trade Commission's National Do Not Call Registry.

131.    Paragraphs 1–118 are hereby incorporated by reference.

132.    When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape willfully or knowingly called a phone number registered on the Federal Trade Commission's National Do Not Call Registry and which MXRRU and Timescape knew or should have known was registered as such.

133.    In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(c)(2).

## COUNT SIX
### Violations of 47 C.F.R. § 64.1200(d)(1)-(2): Failing to have a written policy for properly maintaining an internal do-not-call list.

134.    Paragraphs 1–118 are hereby incorporated by reference.

135.    Defendants either failed to institute a written policy for maintaining an internal do-not-call list, or failed to train their phone representatives and other personnel in the existence and proper use of an internal do-not-call list.

136.    Defendants also failed to provide any such policy to Plaintiff when requested.

137.    In so doing, during each of the calls alleged *supra*, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(d)(1)-(2).

## COUNT SEVEN
### Violations of 47 C.F.R. § 64.1200(d)(3): Failing to honor a do-not-call request.

138.    Paragraphs 1–118 are hereby incorporated by reference.

139.    MXRRU and Timescape continued calling Plaintiff despite him requesting multiple times to not to be called again, specifically on February 8, 2018; May 1, 2018; May 3, 2018; and September 10, 2019.

140.    Thus, when initiating all of the calls alleged *supra*—with the exception of the first call on February 8, 2018—MXRRU and Timescape failed to honor Plaintiff's requests to not call him again.

141.    In so doing, during all of the calls alleged *supra*, with the exception of the February 8, 2018 call, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(d)(3).

## COUNT EIGHT
### Violations of 47 C.F.R. § 64.1200(d)(4): Failing to provide contact information for the sponsor of call.

142.    Paragraphs 1–118 are hereby incorporated by reference.

143.    When MXRRU and Timescape called Plaintiff on the dates alleged *supra*, MXRRU and Timescape failed to provide Plaintiff with a telephone number or address at which Plaintiff could contact the sponsor of the call—*i.e.*, the Defendants—without requiring a sale first be made.

144.    In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(d)(4).

## COUNT NINE
### Violations of N.M. Stat. Ann. § 57-12-22(A): Utilizing an ATDS with a prerecorded message to transmit a telephone call to a cell phone.

145.    Paragraphs 1–118 are hereby incorporated by reference.

146.    Defendants have not received any consent from Plaintiff to transmit prerecorded messages to him.

147.    When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape willfully utilized an ATDS and prerecorded message to do so.

148.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(A).

**COUNT TEN**
**Violations of N.M. Stat. Ann. § 57-12-22(B)(1): Failing to disclose the name of the sponsor of a call within 15 seconds.**

149.    Paragraphs 1–118 are hereby incorporated by reference.

150.    When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, although Plaintiff stayed on the line for at least 15 seconds and the calls lasted longer than 15 seconds, neither MXRRU nor Timescape ever disclosed the true name of the company calling or the company's sponsor during those initial 15-second periods.

151.    MXRRU and Timescape thereby willfully failed to disclose the name of the sponsor of the phone call within 15 seconds of Plaintiff answering the call.

152.    In failing to do so, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(B)(1).

**COUNT ELEVEN**
**Violation of N.M. Stat. Ann. § 57-12-22(B)(2): Using a euphemism to mispresent the purpose of a call.**

153.    Paragraphs 1–118 are hereby incorporated by reference.

154.    When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape used prerecorded messages which falsely announced the calls as coming from various well-known hotel brands as part of an exclusive selection of telephone numbers or hotel patrons.

155.    In using these euphemisms, rather than stating that the call was from Sunset World Group or Calypso Cay Resort, MXRRU and Timescape mispresented the primary purpose of the call.

156.    MXRRU and Timescape thereby willfully misrepresented the purpose of the call.

157.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(B)(2).

## COUNT TWELVE
**Violations of N.M. Stat. Ann. § 57-12-22(B)(7): Initiating a call using an ATDS that allows for a more than two-second delay when call is answered.**

158.    Paragraphs 1–118 are hereby incorporated by reference.

159.    When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape willfully utilized an ATDS that dials and engages the telephone numbers of more than one person at a time but allows the possibility of a called person not being connected to the calling person for a period greater than two seconds.

160.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(B)(7).

## COUNT THIRTEEN
**Violations of N.M. Stat. Ann. § 57-12-22(C)(1): Making a telephone solicitation to a telephone number on the Federal Trade Commission's National Do Not Call Registry.**

161.    Paragraphs 1–118 are hereby incorporated by reference.

162.    When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape willfully transmitted a telephone solicitation to a phone number registered on the Federal Trade Commission's National Do Not Call Registry.

163.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(C)(1).

## COUNT FOURTEEN
**Violations of N.M. Stat. Ann. § 57-12-22(C)(2): Circumventing a Caller ID service.**

164.    Paragraphs 1–118 are hereby incorporated by reference.

165.    By MXRRU and Timescape spoofing its phone numbers when it called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape willfully and intentionally circumvented Plaintiff's use of his caller ID service.

166.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(C)(2).

## COUNT FIFTEEN
### Trespass to Chattels

167.    Paragraphs 1–118 are hereby incorporated by reference.

168.    The calls to Plaintiff substantially interfered with, disturbed, and deprived him of the use and enjoyment of his cell phone.

169.    MXRRU and Timescape knew, or should have known, that their calls to Plaintiff's phone, and the phones of other telephone subscribers called, would result in such interference and disturbance to the use of such personal property.

170.    When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape willfully or knowingly utilized an artificial or prerecorded voice to deliver a message which did not state the true identity of the business calling.

171.    In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(b)(1).

172.    When MXRRU and Timescape called Plaintiff's cell phone on the dates alleged *supra*, MXRRU and Timescape willfully or knowingly utilized an artificial or prerecorded voice to deliver a message which did not state the telephone number of the business calling.

173.    In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(b)(2).

174.    Defendants structured their telemarketing operation to shirk regulatory requirements (including, 47 C.F.R. § 64.1200(b)(1)-(2)) that, if followed, would have allowed Plaintiff, and any other telephone subscribers called, to identify the caller and sponsor of the call, contact the sponsor of the calls, and prevent further calls.  This is because Defendants knew they were causing a disturbance to the personal property of telephone subscribers throughout the country, including Plaintiff.

175.    Accordingly, Defendants are liable to Plaintiff under the theory of trespass to chattels.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A.  pursuant to 47 U.S.C. § 227(b)(3)(B) and § 227(c)(5)(B), damages for each of the violations of the TCPA committed by Defendants;

B.  pursuant to 47 U.S.C. § 227(b)(3) and § 227(c)(5), trebled damages for each of the willful or knowing violations of the TCPA committed by Defendants;

C.  pursuant to N.M. Stat. Ann. § 57-12-10(B), damages for each of the violations of the NMUPA committed by Defendants;

D.  pursuant to N.M. Stat. Ann. § 57-12-10(B), damages for each of the willful violations of the NMUPA committed by Defendants;

E.  damages in accordance with the common law theory of trespass to chattels;

F.  for punitive damages sufficient to punish Defendants for their attempts to avoid legal reproach;

G.  pursuant to 47 U.S.C. § 227(b)(3)(A), § 227(c)(5)(A), and N.M. Stat. Ann. § 57-12-10(A), for an injunction ordering Defendants to cease their telemarketing calls to Plaintiff;

H.  pursuant to N.M. Stat. Ann. § 57-12-10(C), for Plaintiff's reasonable and necessary attorney's fees and costs;

I.  for pre and post-judgment interest;

J.  and for all other relief to which Plaintiff is justly entitled under New Mexico or Federal law.

Dated this 6th day of April, 2023.

Respectfully Submitted,

By: /s/ Ruben J. Escano

**Ruben Escano**, *pro se*

2311 Ranch Club Road
Suite #2-180
Silver City, NM 88061
(201) 527-8938
rubenescano@gmail.com

IT IS HEREBY CERTIFIED that on this 6th day of April, 2023, the foregoing was filed electronically through the CM/ECF system, causing all parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing.

By:  /s/ Ruben J. Escano
_____
**Ruben J. Escano**, *pro se*