UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

RUBEN ESCANO,

    Plaintiff,

v.                                                                              Civ. No. 22-360 DHU/GJF

RCI, LLC, *et al.*,

    Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Plaintiff's Second Motion to Amend Complaint ("Second Motion to Amend") [ECF 152]. The motion is fully briefed. *See* ECFs 155; 159. As set forth below, the Court recommends[1] denying this motion.

**I. BACKGROUND**

    **A. Procedural Background**

On February 24, 2023, the Court entered a scheduling order giving Plaintiff until March 15, 2023, to amend his pleadings and/or join parties. ECF 71 at 1. Plaintiff moved for leave to amend his original complaint on March 15, 2023, the deadline for filing such a motion. *See* ECF 74. Noting no opposition by Defendants, the Court granted Plaintiff leave to amend [ECF 79], and his First Amended Complaint ("FAC") followed on April 6, 2023 [ECF 80]. On May 11, 2023, the Court set a settlement conference for June 16, 2023, staying discovery. ECF 93. Approximately a month later, on June 9, 2023, after considering the parties' settlement exchanges and confidential submissions, the Court determined that the settlement conference would not be productive. ECF 99. As a result, the Court vacated the settlement conference, lifted the discovery stay, and set new

---

[1] The Court files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's June 27, 2022 Order of Reference Relating to Non-Prisoner Pro Se Cases. ECF 33.

deadlines, including an October 2, 2023 discovery deadline, an October 13, 2023 discovery motions deadline, and an October 27, 2023 pretrial motions deadline. ECF 99.

The day *after* discovery closed, Plaintiff filed his Second Motion to Amend, in which he explains that his proposed Second Amend Complaint ("SAC") "mostly emphasizes the theory of ratification already pled in his previous complaints . . . and the facts [he] would need to support such a theory." ECF 152. With Plaintiff's Second Motion to Amend pending, Defendants filed motions for summary judgment on October 27, 2023, the deadline imposed by the Court for filing pretrial motions. *See* ECFs 99; 164–65.

### B. First Amended Complaint

Plaintiff's FAC, currently the operative complaint in this case, asserts various claims under the Telephone Consumer Protection Act ("TCPA") and the New Mexico Unfair Practices Act ("UPA") as well as a claim for trespass to chattels. *See* ECF 80. Underlying each of these claims is Plaintiff's allegation that from February 8, 2018, to January 20, 2021, he received at least 26[2] "automatically-dialed and unsolicited [telemarketing] calls" to his cell phone. *Id*. ¶¶ 1, 15. According to Plaintiff's FAC, "MXRRU and Timescape made [these] calls as part of a joint enterprise, and on behalf of and under the direct, implied, or apparent authority of RCI." *Id*. ¶ 16; *see also id*. ¶ 56 ("MXRRU and Timescape united to set up, direct, and control a telemarketing operation together[,] . . . which resulted in the calls alleged"). Plaintiff specifies that Defendants initiated the subject calls in an attempt to sell vacation packages and timeshares for Sunset World Group resorts in or near Cancun, Mexico or for the Calypso Cay Resort in Kissimmee, Florida, which Timescape owns and operates. *Id*. ¶¶ 6, 19, 45. Plaintiff further alleges that MXRRU and

---

[2] Although Plaintiff asserts in his FAC that he received 27 telemarketing calls, the Court has trimmed those calls to 26, having determined that the call allegedly made on February 8, 2018, is barred by the statute of limitations. ECFs 58 at 36; 59.

2

Timescape owned and operated resorts within RCI's timeshare exchange network and that RCI financially benefitted from MXRRU and Timescape being a part of the network and from the new members generated through MXRRU and Timescape's joint telemarketing operation. *Id*. ¶¶ 71–73. With respect to RCI, Plaintiff's FAC relies upon alternative theories of liability: first, that RCI "is vicariously liable for the telemarketing calls under the theory of apparent authority" and "because [the calls] were transmitted . . . with [its] ratification," *id*. ¶¶ 78, 82, and alternatively, that "RCI is directly liable for the calls because RCI was part of the joint enterprise." *Id*. ¶ 79.

**II. PARTIES' PRIMARY ARGUMENTS**

    **A. Plaintiff's Contentions**

In support of his Second Motion to Amend, Plaintiff explains that his proposed SAC "does not add any new claims, but mostly emphasizes" the previously-pled theory of ratification and alleges facts necessary to establish that theory. ECF 152 at 3 (citing ECF 80 ¶ 82). As to the considerations under Federal Rule of Civil Procedure 15(a)(2), Plaintiff asserts that there was no undue delay in his request to amend, that there would be no undue prejudice to Defendants if the amendment were permitted, and that he does not seek amendment for bad faith or with dilatory motive. *Id*. at 4-5. With respect to Federal Rule of Civil Procedure 16(b)(4), Plaintiff argues that he has shown good cause, as he was not aware of all the facts supporting his ratification claims by the March 15, 2023 deadline for moving to amend. *Id*. at 5. He represents that he became aware of those facts after the amendment deadline "through discovery, his ongoing investigation, and responses to subpoenas served on non-parties within the timeshare industry." *Id*. Conceding that his proposed SAC continues to allege, in the alternative, that Defendants were engaged in a joint enterprise, Plaintiff suggests that the facts obtained in discovery have revealed that "the most efficient route toward judgment against Defendants is a theory of ratification." ECF 159 at 2.

3

### B. Defendants' Contentions

Defendants insist that they will be prejudiced if Plaintiff is now permitted to amend his FAC, as discovery has closed and Defendants have already moved for summary judgment. ECF 155 at 2. In Defendants' view, the proposed SAC does more than merely emphasize a previously-asserted theory; they contend that it presents an entirely new set of factual allegations and an entirely new legal theory. *Id*. at 2–4. As Defendants describe the proposed SAC, it effectively abandons factual allegations and legal theories that have underpinned Plaintiff's suit thus far (*i.e.*, that MXRRU and Timescape acted in concert under RCI's direction). *Id*. at 2–3. Defendants observe that Plaintiff's proposed SAC seeks to allege that officers of Sunset World were operating a telemarketing/money laundering operation and that Defendants chose to associate with certain officers or executives despite their well-known legal violations. *Id*. at 4–5. As to Plaintiff's argument that he recently discovered the basis for the proposed SAC after discovery reopened in June 2023, Defendants note that the news reports on which he relies are dated 2011 and 2016. *Id*. at 6. Accordingly, they maintain that Plaintiff fails to demonstrate that he could not have discovered these "well-known violations" of law before bringing suit. *Id*.

## III. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 16(b)(3)(A) requires the Court to set a deadline to amend pleadings. That deadline can only be modified for "good cause." Fed. R. Civ. P. 16(b)(4). To demonstrate "good cause," the movant must show that the "scheduling deadlines [could not] be met despite [the movant's] diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (internal citation and quotation omitted). Good cause may be satisfied when a party "learns new information through discovery." *Id*. Yet, "[i]f the plaintiff knew of the underlying conduct but simply failed to raise [the] claims, however, the claims are

barred." *Id*. Further, if a party fails to adequately explain a delay in filing a motion to amend, they fail to show the diligence required for good cause. *Husky Ventures, Inc., v. B55 Investments, Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018). Possible prejudice to the party opposing the amendment is "[a]nother relevant consideration" under Rule 16(b)(4). *Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 988 (10th Cir. 2019). Ultimately, "trial courts have considerable discretion in determining what kind of showing satisfies this . . . good cause standard." *Id.* at 988 (citation omitted).

In addition to demonstrating "good cause" for failing to comply with a scheduling order deadline under Rule 16(b), a party seeking leave to amend must also satisfy Federal Rule of Civil Procedure 15(a).[3] *Gorsuch*, 771 F.3d at 1240. As relevant here, Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule provides that "[t]he court should freely give leave when justice so requires." *Id*. Rule 15(a)(2) aims to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982).

Ultimately, if the movant fails to satisfy either Rule 16(b)'s "good cause" standard or Rule 15(a)'s "justice so requires" standard, the district court does not abuse its discretion in denying a motion to amend. *Tesone*, 942 F.3d at 990. Given that Rule 16(b) supplies the more stringent standard of the two, the good cause standard effectively serves as the threshold inquiry. *See Gorsuch,* 771 F.3d at 1241; *see also Tesone*, 942 F.3d at 990 ("[I]f the movant fails to show good

---

[3] Some courts have also analyzed motions to amend pleadings filed after the scheduling order deadline under a third standard: Federal Rule of Civil Procedure 6(b)'s excusable neglect standard. However, the Tenth Circuit has expressed disapproval of applying the excusable neglect standard to a motion to amend. *Birch v. Polaris Indus.*, 812 F.3d 1238, 1249 n.2 (10th Cir. 2015) (reasoning that it was harmless legal error for the court to apply the Rule 6(b) standard—in addition to Rules 16(b) and 15(a)—when deciding a motion to amend pleadings after the scheduling order deadline, though it observed that Rule 6(b) and Rule 16(b) provided "essentially the same standard").

cause under Rule 16(b), there is no need for the Court to move on to the second step of the analysis, i.e., whether the movant has satisfied the requirements of Rule 15(a).") (citation omitted).

## IV. ANALYSIS

According to Plaintiff's description, his proposed SAC accomplishes four purposes: (1) it "emphasizes" that MXRRU made/directed the subject calls and that other Defendants ratified them; (2) it adds a d/b/a for MXRRU; (3) it corrects some possible technical deficiencies; and (4) it clarifies that Plaintiff did not know specifically who made the calls but that they were made to the benefit of Defendants and that Defendants knew or should have known of the underlying conduct. ECF 152 at 3–4. Because Rule 16(b)(4) serves as the threshold inquiry, the Court begins its analysis under that provision, which requires a showing of good cause for modification of the scheduling order.

Plaintiff insists that he has shown good cause because he was not aware of all the facts supporting the allegations of his ratification theory by the deadline for moving to amend. ECF 152 at 5. He represents that he only became aware of those facts after the deadline for amendments through discovery, through his "ongoing investigation," and through responses to subpoenas from non-parties in the timeshare industry. ECF 152 at 5. Plaintiff elaborates:

> On July 17, 2023, Plaintiff obtained [in response to Plaintiff's written discovery requests], a contract showing Timescape had an agreement with a company controlled in part by an MXRRU executive, Ascendant Holidays, LLC ("Ascendant"). The agreement allowed Ascendant to sell certain vacation-related investments at Timescape's Calypso Cay Resort and required that Defendant RCI, LLC's ("RCI") timeshare exchange memberships be sold along with these vacation-related investments. Most crucially, during a September 25, 2023 deposition of Defendant Stephen Bradley (in his individual capacity and as a representative of Timescape), Mr. Bradley stated that he did not care to second-guess Ascendant's business practices. This is despite Ascendant generating *thousands* of visitors to the Calypso Cay Resort for sales presentations (another fact Plaintiff discovered only on October 2,

> 2023). The facts found in discovery show that Timescape and Mr. Bradley shut their eyes to the violative conduct of Ascendant and its executives, an element of ratification.
>
> Additionally, during a September 29, 2023 deposition of a company representative of RCI, the company representative confirmed that RCI's timeshare exchange memberships were sold at the resorts at issue. This is a more straightforward line of liability than the previous complaints, which alleged that RCI benefited because the timeshares at issue contributed to the general value of RCI's business. Instead of alleging that the value of RCI's business increased generally due to the underlying timeshare sales, the []SAC alleges that RCI benefited because its actual products (i.e., memberships) were sold specifically at the sales presentations which the calls to Plaintiff were made to promote.

ECF 152 at 6 (citing ECFs 70; 152-1). But the Court is not persuaded that Plaintiff's description of information gleaned from written discovery and depositions—information seemingly unrelated to many of his proposed amendments—satisfies his burden to establish good cause for moving to amend his complaint seven months after the deadline. To be sure, the amendments contained in the proposed SAC are much more extensive than Plaintiff acknowledges in his Second Motion to Amend.

For instance, Plaintiff's proposed SAC alleges for the first time that the telemarketing scheme at issue was operated by a husband-and-wife duo, Erika Garcia and Orlando Arroyo, whose practices have been the subject of well-publicized federal investigations and who have used their "timeshare business as a vehicle for international money laundering for organized crime in . . . Mexico." ECF 152-1 ¶¶ 39, 43. Plaintiff further alleges that Sunset Word Group was involved in a similar telemarketing scheme that resulted in a well-publicized $120,000,000 Federal Communication Commission fine against one of its associates. *Id*. ¶ 41. Plaintiff contends that RCI, Timescape, and Bradley nevertheless "chose to associate with [these] executives . . . with complete disregard for the flagrant nuisance the Defendants were unleashing on the American

public, including Plaintiff." *Id.* ¶ 44. The proposed SAC also makes new assertions with respect to which entity or entities initiated the subject telemarketing calls. He suggests that the subject telemarketing calls may have been facilitated by MXRRU, for which Garcia and Arroyo serve as officers, or by Garcia and Arroyo's "other companies." *Id.* ¶ 39. Alternatively, he alleges that some of the telemarketing calls were a result of explicit and implied agreements between Timescape and other entries, agreements from which RCI and MXRRU ultimately benefited. *Id.* ¶ 56. In terms of the purpose of the telemarketing calls, Plaintiff's proposed SAC alleges that the calls were made to promote attendance at sales presentations at which the presenters, in turn, sold RCI's timeshare exchange memberships as well as vacation stays, timeshares, and memberships at resorts within MXRRU's network. *Id.* ¶ 45. In support of Plaintiff's ratification claims, the proposed SAC alleges that RCI, Timescape, and Bradley "materially benefited from the telemarketing scheme at issue and stood to materially benefit from the calls to Plaintiff" and that they "knew, or should have known" of the unlawful telemarketing schemes. *Id.* ¶¶ 46–47, 51–53.

But critically, Plaintiff failed to discuss these proposed amendments in his Second Motion to Amend or to adequately explain why the Court-imposed scheduling deadline could not be met as to these allegations despite diligent efforts. Notably, in support of the allegations described above, the SAC references 2011 and 2016 news reports covering the investigations and fines to which certain entities were subject. *Id.* ¶ 40 (citing July 22, 2011 Letter from Canadian Radio-Television and Telecommunications Commission to Orlando Arroyo, *available at* https://crtc.gc.ca/eng/archive/2011/lt110722d.htm?ga=2.77202066.688176365.1708643023-1121569982.1708643023); ¶ 43 (citing Orlando arrastra a la ilegalidad al consorcio Sunset (Dec. 14, 2016), *available at* https://medias.sipse.com/impresos/122016/ 1412160af7e2129.pdf.). That the reports on which Plaintiff relies were publicly available seven and twelve years before he

8

moved to amend undercuts his position that he could not have requested leave to amend before the deadline in the scheduling order. For if the alleged legal violations by Defendants' affiliates were in fact "well-publicized," as Plaintiff suggests, it seems that with reasonable diligence he could have discovered them before the amendment deadline. *See* ECF 152 at 4 (alleging that "despite these well-publicized investigations, the other Defendants chose to associate with these executives, without confirming that they had ceased their illegal practices"). At most, Plaintiff argues in his reply brief that Defendants "fail[] to explain why [he] should have been aware of foreign news reports." ECF 159 at 2. But it is Plaintiff's burden under Rule 16(b)(4) to demonstrate "good cause" for his failure to seek amendment within the scheduling order deadline, and his observation that the reports on which he now relies were "foreign" fails to satisfy that burden.

Defendants insist that, in addition to including expansive new factual allegations, Plaintiff's proposed SAC "abandon[s] his joint-enterprise theory" in favor of an entirely new theory. ECF 155 at 4–6 & n.2. Although the Court is not convinced that the proposed SAC altogether abandons Plaintiff's joint enterprise theory, his newest iteration of that theory is certainly more vague than its predecessor. Whereas Plaintiff's FAC alleges that "MXRRU and Timescape united to set up, direct, and control a telemarketing operation together[,] . . . which resulted in the calls alleged[,]" *see* ECF 80 at ¶ 56, his proposed SAC "*alternatively* alleges that the Defendants are liable for the calls because any combination of the Defendants formed a joint enterprise with each other and/or other entities or individuals who made the calls or directed them." ECF 152-1 at 13 (emphasis added). Plaintiff fails to offer a compelling justification for amending his complaint to include a less-specific alternative theory of liability.

In terms of legal theories, Plaintiff insists that his proposed SAC merely "emphasizes the theory of ratification already pled" [ECF 152 at 3], which in his *current* view provides "the most

9

efficient route toward judgment against Defendants" [ECF 159 at 2]. Plaintiff's proposed SAC retains the ratification theory he previously asserted against RCI,[4] but it also incorporates numerous new factual amendments in support of that theory. S*ee, e.g.*, ECF 152-1 ¶ 46–48; 51–54. Ultimately the Court is unconvinced that Plaintiff's expressed desire to *emphasize* an already-pled legal theory warrants permitting the extensive post-deadline amendments Plaintiff proposes.

Beyond emphasizing his ratification theory and asserting facts purportedly discovered after the amendment deadline, Plaintiff offers a final justification for his untimely motion to amend: the proposed SAC "corrects some possible technical flaws." ECF 152 at 4. By way of example, Plaintiff explains that the proposed SAC "clarifies that for a TCPA claim to be successful, a plaintiff need not know specifically who made the calls, but only that the calls were made to the benefit of the Defendants and the Defendants knew, or should have known, of the underlying conduct." *Id*. Plaintiff continues: "Well-established case law, cited in the [proposed SAC] shows that singling out a specific caller for each call is not necessary." *Id*. But Plaintiff's evolving understanding of TCPA law and what is required to establish a violation does not constitute good cause for amending his complaint after the scheduling order deadline. *See Husky Ventures*, 911 F.3d at 1020 ("[G]ood cause obligates the moving party to 'provide an adequate explanation for any delay.'").

---

[4] Plaintiff neglects to mention that his FAC asserts claims under the ratification theory *only as to RCI*, whereas his proposed SAC also asserts claims under the ratification theory against Timescape and Bradley. *Compare* ECF 80 ¶ 82 (FAC alleging, in the alternative, RCI is vicariously liable based upon theory of ratification), ¶ 55 (FAC alleging Bradley is vicariously liable under theory of respondeat superior); ¶¶ 67–69 (FAC alleging Timescape is liable based upon theory of joint enterprise), *with* ECF 152-1 ¶ 50 (SAC alleging RCI is liable under theory of ratification) *and* ¶ 55 (SAC alleging Timescape and Bradley are also liable under theory of ratification). But Plaintiff fails to discuss the newly-asserted ratification theory against Timescape and Bradley in his Second Motion to Amend and, instead, offers a misleading characterization of his proposed SAC: that he was merely emphasizing a previously-asserted theory. Given this misleading characterization, and because Plaintiff likewise failed to explain why he could not have previously asserted the ratification theory as to Timescape and Bradley, he has failed to meet the "good cause" standard for failing to amend his complaint in this manner before the Court-imposed deadline.

For their part, Defendants insist that the prejudice they would suffer if the Court were to allow the proposed amendment at this stage of the litigation is "manifest." ECF 155 at 2. In Defendants' assessment, "Plaintiff now has abandoned the factual allegations and legal theories that have underpinned his lawsuit since the start, in an apparent acknowledgment that he cannot prove the allegations that allowed him to survive the pleading stage." *Id*. at 2–3. And Defendants emphasize that discovery has closed and the deadline for moving for summary judgment has passed. *Id*.

Prejudice to the party opposing amendment is a relevant consideration even under Rule 16(b)(4)'s "good cause" inquiry, s*ee Tesone*, 942 F.3d at 988, and the Court agrees that permitting the belated and extensive amendments that Plaintiff proposes—particularly when Defendants have already filed their dispositive motions and the trial date is only a month away—would significantly prejudice Defendants and weighs against granting leave to amend.[5] Conversely, the Court perceives little hardship to Plaintiff in denying his request to "emphasize" a previously-asserted legal theory, as he puts it, or to flesh out the factual underpinnings of that theory. Put simply, Plaintiff has not adequately articulated in his Second Motion to Amend how he will be prejudiced if he proceeds on his claims as stated in his FAC.

In sum, Plaintiff's proposed SAC greatly exceeds the scope of the amendments he discusses and attempts to justify in his Motion, and he has failed to articulate an adequate explanation or "good cause" for his delay in moving to amend. Moreover, Plaintiff's purported interest in merely emphasizing a previously asserted legal theory is outweighed by the prejudice

---

[5] The Court acknowledges that not all of the prejudice to Defendants is attributable to Plaintiff. After all, Plaintiff filed his Second Motion to Amend on October 3, 2023, before Defendants filed their summary judgment motions on October 27, 2023. Even so, Plaintiff's practice of filing untimely and often redundant discovery motions has adversely impacted the pace with which the Court could resolve those motions and make findings and recommendations as to the instant Motion.

to the Defendants in permitting substantial amendments after the amendment deadline, after discovery, after dispositive motions, and with less than a month until trial. Thus, in exercising its "considerable discretion" to determine whether Plaintiff has satisfied Rule 16(b)(4)'s good cause standard, *see Tesone*, 942 F.3d at 988, the Court recommends Plaintiff's Second Motion to Amend be denied.

## V. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Court DENY Plaintiff's Second Motion to Amend Complaint [ECF 152].

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.