# **Exhibit Q**

Deposition of Stephen Bradley

Case 2:22-cv-00360-DHU-GJF   Document 209-17   Filed 04/01/24   Page 2 of 5

Deposition of Stephen Bradley

Ruben Escano vs. RCI, LLC. a Delaware Corporation, et. al.

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW MEXICO
 2

 3 RUBEN ESCANO,

 4      Plaintiff,

 5 vs.
                        CASE NO.:  2:22-cv-00360-DHU-GJF
 6 RCI, LLC, a Delaware
   Corporation, et al.,
 7
      Defendants.
 8

 9

            * * * * * *
10

11

        VIDEOTAPED DEPOSITION OF:
12             STEPHEN BRADLEY

13

     Taken on Behalf of the Plaintiff
14

15 DATE:            September 25, 2023
   TIME             10:05 a.m. - 4:21 p.m.
16 PLACE:           Court Reporting Specialists
                    37 North Orange Avenue
17                  Suite 500
                    Orlando, Florida  32801
18

19    Examination of the witness taken before:

20 SHARON A. SNELL, Court Reporter and Notary Public
      Court Reporting Specialists, LLC
21           707 Mabbette Street
           Kissimmee, Florida  34741
22

23        * * * * * *

24

25
```

Page 2

```
 1 APPEARANCES:

 2   RUBEN ESCANO, PRO SE
     2311 Ranch Club Road
 3   Suite #2-180
     Silver City, New Mexico   88061
 4   201-527-8938
     rubenescano@gmail.com
 5
     BRIAN R. CUMMINGS, ESQUIRE
 6   Stinson, LLP
     100 South Ashley Drive
 7   Suite 500
     Tampa, Florida   33602
 8   813-534-7334
     brian.cummings@stinson.com
 9   On behalf of Defendants Stephen Bradley
     and Timescape Resorts, LLC.
10
     MARTY A. STONE, ESQUIRE
11   Law Office of M.A. Stone, LLC
     14142 Amelia Island Way
12   Orlando, Florida   32828-4808
     321-443-4643
13   matone@maslaw.net
     On behalf of Defendants Stephen Bradley
14   and Timescape Resorts, LLC.

15   JOSEPH C. WYLIE, ESQUIRE
     K&L Gates, LLP
16   70 West Madison Street
     Chicago, Illinois   60602-4207
17   312-807-4439
     joseph.wylie@klgates.com
18   On behalf of Defendant RCI, LLC Corporation.
     (Via telephone)
19
     ALSO PRESENT:
20
     FRED GARTRELL, VIDEOGRAPHER
21

22

23

24

25
```

Page 3

```
 1                    INDEX

 2          TRANSCRIPT OF PROCEEDINGS

 3 TESTIMONY OF STEPHEN BRADLEY

 4    Direct Examination by Mr. Escano          4

 5

 6 CERTIFICATE OF REPORTER                     168

 7 ERRATA SHEET                                170

 8 CONCORDANCE                                 171

 9

10          * * * * * *

11

12              EXHIBITS

   NO. DESCRIPTION                            PAGE

13 1    Bradley Corporation Of Winter Park Printout   30

14 2    01-07-2018 Dispute Summary             35

15 3    03-19-2018 Dispute Summary             36

16 4    Florida DBPR Page                      51

17 5    File No: 1:16-CV-08 Amended Complaint & Jury
        Demand                                 68
18
   6    Proof Of Service                       69
19
   7    Defendant Timescape Resorts, LLC's Answers And
20      Objections To Plaintiff's First Interrogatories   90

21 8    Sales Agreement                        92

22 9    Independent Contractor, Broker, Sub-Broker Or
        Solicitor Tour Compensation Agreement   140
23

24          * * * * * *

25

26
```

Page 4

```
 1 WHEREUPON,

 2    THE FOLLOWING PROCEEDING WAS HELD:

 3       THE VIDEOGRAPHER:  Good morning.  We are now on

 4 the record.  Today is Monday, September 25, 2023.  The

 5 approximate time is 10:05 a.m.  This is the video

 6 deposition of Stephen Bradley taken in the matter of

 7 Escano versus RCI, LLC.

 8           Will counsel please identify themselves for

 9 the record after which our court reporter, Miss Sharon

10 Snell, will administer the oath to the witness?

11    MR. ESCANO:  I am Ruben Escano.  I'm the

12 self-represented plaintiff in the case.

13    MR. CUMMINGS:  I am Brian Cummings with Stinson,

14 LLP.  I represent Timescape Resorts, LLC and Stephen

15 Bradley.

16    MR. STONE:  Marty Stone, outside general counsel

17 to Timescape Resorts, LLC and Stephen Bradley.

18    MR. WYLIE:  This is Joseph Wylie, K&L Gates on

19 behalf of RCI, LLC.

20 WHEREUPON,

21              STEPHEN BRADLEY

22 having been first duly sworn, was examined and testified

23 as follows:

24    THE WITNESS:  I do.

25           DIRECT EXAMINATION
```

Page 121

1   Q.   So it sounds like that was something like a
2   consultant that was working with you?
3       A.   I can't remember if he was working for me or
4   working for Bravo.
5       Q.   Okay.  Let's move to Page 5, Paragraph H.  I'll
6   give you an opportunity to read that to yourself, Mr.
7   Bradley.
8       A.   Okay.
9       Q.   Did -- so this contract, so this section says both
10  parties shall agree from time to time in writing on the tour
11  qualifications.  Did that happen?
12      A.   No.
13      Q.   Why not?
14      A.   Just one of those things you put in agreements and
15  there's never a need to go back to it.
16      Q.   Okay.  And what does a qualified tour mean?
17      A.   Our -- it says by TR in the past.  Our
18  qualifications are typically 25 to 65.  If you're married,
19  you have to tour with your spouse.  You have to have a
20  personal ID and a major credit card.
21      Q.   Okay.  So not anyone can just be at the sales
22  presentation.  It has to be -- there's certain
23  qualifications, age qualifications that you have to meet?
24      A.   Yes.
25      Q.   And you mentioned the Calypso Escapes brand, you

Page 122

1   wanted to offer, it sounded like you wanted to offer
2   something for international visitors.  Is that true?
3       A.   Yeah.  I wanted a product that we could offer to
4   those who didn't buy Ascendant Holidays package.
5       Q.   And what does the international aspect have to do
6   with it?
7       A.   Well, you asked me about why somebody might be
8   disqualified, and I told you that occasionally they don't
9   have a FICO score.  And occasionally they would not get the
10  full presentation, I thought.  I mean, I --
11      Q.   So when you say they wouldn't get the full
12  presentation, is that because someone at Ascendant Holidays
13  would realize they weren't qualified in their definition and
14  just decided not to sell to them?
15      A.   That could be one way.
16      Q.   And were these people, these international
17  visitors from anywhere in particular --
18      A.   No.
19      Q.   -- or anywhere predominantly?
20      A.   No.
21      Q.   Okay.  From all over the world?
22      A.   Yeah.  Orlando, Florida, it's an international
23  travel location, so all over the world.
24      Q.   I gotcha.  And at these sales presentations, RCI
25  memberships, you mentioned the RCI benefit, but RCI

Page 123

1   memberships were sold at these sales presentations?
2       A.   No.
3       Q.   No?  Were they sold at the Calypso Cay?
4       A.   Well, the way you're phrasing the question, RCI
5   memberships were never sold.  The RCI membership was sort of
6   an impertinent -- a pertinence to owning at the Calypso Cay
7   Vacation Villas.  So it was not something that the owner
8   even paid for.  It was part of the membership and necessary
9   for the rules and regulations of the reservation system to
10  work.
11      Q.   So was it a requirement or it was a piece of the
12  Ascendant Holidays membership?
13      A.   I just spoke about Timescape Resorts interval
14  ownership.  In order for the rules, the reservation rules to
15  work, there has to be an ability to use memberships at
16  Calypso Cay Vacation Villas to travel in an external
17  exchange network.  So the memberships weren't sold.  You
18  were enrolled as a member if you purchased at Ascendant
19  Holidays or at Timescape Resorts.
20      Q.   And whether they purchased from Ascendant Holidays
21  or Timescape Resorts, that enrollment with RCI has a annual
22  fee with it; is that true?
23      A.   I -- I can speak to the Timescape Resorts
24  membership.  The members were not charged a fee.  It was
25  provided to them as club members, and Timescape Resorts paid

Page 124

1   the renewal, the annual renewal fees.  As --
2       Q.   But that's -- go ahead.
3       A.   As far as Ascendant, I'd have to read this
4   document to see how that worked.  Page 3, Paragraph 4 states
5   that the member, after the initial year, would pay the sum
6   of $139.
7       Q.   And they pay that to whom?
8       A.   I don't know.  This is --
9       Q.   Do they pay that to RCI or to Ascendant or
10  Timescape?
11      A.   I wasn't under control of that, so I don't know
12  how Ascendant Holidays handled that.
13      Q.   But you think RCI got -- received money for this
14  arrangement, is that right?
15      A.   Well, I'm, I'm aware that there's an annual fee
16  paid by, paid on behalf of my members and it's paid to RCI.
17      Q.   Okay.  Thank you.  Do you know who Orlando Arroyo
18  is?
19      A.   Yes.
20      Q.   Who is that?
21      A.   Well, he's somebody mentioned in this litigation.
22  I've met him twice.  I believe he's an owner of property in
23  Mexico.
24      Q.   What kind of property?
25      A.   Hospitality property.

Deposition of Stephen Bradley                    Ruben Escano vs. RCI, LLC. a Delaware Corporation, et. al.

Page 165

1    Q.   What was the benefit?

2    A.   Well, if they bought an AH membership, they would

3 earn the commission outlined in this agreement.

4    Q.   But what would Timescape earn?

5    A.   Ten percent of the sales price.

6    Q.   Okay.  Ten percent of the sale at the sales

7 presentation?

8    A.   Uh-huh.

9    Q.   Okay.  Does Timescape still have a relationship

10 with RCI?

11    A.   No.

12    Q.   Did that end in 2021?

13    A.   I believe it ended at the closing of the asset

14 sale in March 31st, 2020.

15    Q.   Okay.  And how often between 2018 and 2020 did you

16 see Jorge Bravo in person?

17        MR. CUMMINGS:  Form.

18    A.   I haven't seen him since 2020.  I don't know, five

19 to ten times, maybe.

20 BY MR. ESCANO:

21    Q.   Five to ten times between 2018 to 2021 total?

22    A.   As I said, I didn't see him in 2020 or '21.  I

23 haven't seen him since, you know, COVID really.  So from

24 2017, '18 and '19, rarely.  If I saw him in the sales center

25 doesn't mean he saw me, but we didn't meet regularly.

Page 166

1    Q.   So about, so between 2018 and 2020, did you say

2 how many times?

3    A.   I don't know, 10 times, could have been 20.  It

4 wasn't a regular meeting or anything like that.

5    Q.   And you guys spoke in person at some of these?

6    A.   Yes.

7    Q.   Have you heard of Sorag, Inc., a company called

8 Sorag, Inc., spelled S-O-R-A-G, Inc.?

9    A.   Only through this litigation.

10    Q.   Are you aware it's a manager of Ascendant

11 Holidays?

12    A.   Well, through this litigation, I've learned that.

13    Q.   And are you aware of Sorag, Inc. is controlled by

14 Orlando Arroyo?

15        MR. CUMMINGS:  Object to the form.

16    A.   I'm not aware of that.

17 BY MR. ESCANO:

18    Q.   Have you ever discussed the settlement discussions

19 in this case with anyone other than your attorneys?

20    A.   No.

21        MR. ESCANO:  We can go off the record for about,

22    let's do five minutes.

23        (Recess was held from 4:16 p.m. until 4:20 p.m.)

24        MR. ESCANO:  Mr. Wylie, are you back?

25        MR. WYLIE:  Never went anywhere.

Page 167

1        MR. ESCANO:  Perfect.  Mr. Cummings, I'm all done

2    with my questioning.  You are more than -- you can ask

3    your questions if you have any.

4        MR. CUMMINGS:  I have no questions.  Mr. Wylie?

5        MR. WYLIE:  None from me.

6        MR. CUMMINGS:  Okay.  Mr. Bradley will read.  And

7    we'll take a copy if it's ordered.  And I'm going to

8    have to follow up on the video, but I'll confer with my

9    client.

10        (This deposition concluded at 4:21 p.m.)

Page 168

2                    CERTIFICATE OF OATH

5 IN THE UNITED STATES DISTRICT:

6 FOR THE DISTRICT OF NEW MEXICO:

7 Case No. 2:22-cv-00360-DHU-GJF

11        I, the undersigned authority, certify that Stephen

12 Bradley personally appeared before me and was duly sworn.

13        He produced a Florida driver's license as

14 identification.

15        WITNESS my hand and official seal this 25th day of

16 September, 2023.

*Sharon A. Snell*

21    SHARON A. SNELL
    Court Reporter,
22    Notary Public, State of
    Florida
23    Notary Commission Expires:
    December 23, 2026

Case 2:22-cv-00360-DHU-GJF   Document 209-17   Filed 04/01/24   Page 5 of 5

Deposition of Stephen Bradley                              Ruben Escano vs. RCI, LLC. a Delaware Corporation, et. al.

Page 169

1          REPORTER'S DEPOSITION CERTIFICATE

2

3  IN THE UNITED STATES DISTRICT COURT:

4  FOR THE DISTRICT OF NEW MEXICO:

5  Case No. 2:22-cv-00360-DHU-GJF

6          I, SHARON A. SNELL, certify that I was authorized

7  to and did stenographically report the foregoing deposition

8  of Stephen Bradley; that a review of the transcript was

9  requested, and that the transcript, pages 1 through 167, is

10 a true and complete record of my stenographic notes.

11         I further certify that the recoverable cost of the

12 original and one copy of the deposition, including exhibits,

13 to Ruben J. Escano is $  .

14         I further certify that I am not a relative,

15 employee, attorney, or counsel of any of the parties,

16 nor am I a relative or employee of any of the parties'

17 attorney or counsel connected with the action, nor am I

18 financially interested in the action.

19         Dated this 9th day of October, 2023.

20

21         _Sharon A. Snell_

22 Total Cost Of            SHARON A. SNELL
23 Transcript: **$895.50**   Court Reporter,
                            Notary Public, State of
                            Florida
24                          Notary Commission Expires:
                            December 23, 2026
25

Page 170

1

2               ERRATA SHEET

3          At the time of the reading and signing of the

4  deposition, the following changes were noted:

5

6  PAGE/LINE          CORRECTION    REASON

7  _____         _____

8  _____         _____

9  _____         _____

10 _____         _____

11 _____         _____

12 _____         _____

13 _____         _____

14 _____         _____

15 _____         _____

16 _____         _____

17 _____         _____

18 _____         _____

19 _____         _____

20 Under penalties of perjury, I declare that I have read the
   foregoing document and that the facts stated in it are true.

21

22 -----------        ----------------------
   DATE               STEPHEN BRADLEY

23

24

25