UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| RUBEN J. ESCANO, § | |
| § | |
| Plaintiff, § | |
| § | 2:22-CV-00360-DHU-GJF |
| vs. § | |
| § | |
| RCI, LLC, *et al.* § | |
| § | |
| Defendants. § | |

**DEFENDANT RCI, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and D.N.M-LR 56.1, Defendant RCI, LLC ("RCI") respectfully submits this reply in support of its motion for summary judgment.

## I. INTRODUCTION

RCI had nothing whatsoever to do with any of the calls Plaintiff Ruben Escano (Plaintiff") received, and there is no evidence linking RCI to any of those calls. Instead, Plaintiff throws together a hodgepodge of non sequiturs and "inferences" to try to avoid the fact that he has failed, after two years of litigation, to demonstrate that RCI could possibly be liable for any of the calls in question. At this stage of the proceedings, unsupported allegations are not sufficient.

As the undisputed evidence shows, RCI did not make any of the calls in question. As Plaintiff knows, and does not dispute, RCI has no record of Plaintiff or his phone number in its system, does not make calls to nonmembers, and does not spoof its caller ID. Plaintiff denies these undisputed facts based solely on a caller's use of RCI's name during a single call that is time-barred. Plaintiff's denial of RCI's representative's sworn testimony on this point can only be made in bad faith.

1

That leaves Plaintiff's agency theory of liability. In Plaintiff's telling, RCI is liable because the calls at issue were made for the purposes of selling discounted stays at resorts with which RCI has relationships, and at which timeshare purchasers might be enrolled as RCI members. Plaintiff ignores a host of problems with this theory:

- Plaintiff does not know who made the calls at issue;
- Plaintiff cannot demonstrate an agency relationship, directly or indirectly, between the callers and MXRRU;
- Only one of the calls mentioned resorts with any connection to Sunset World Group;
- Plaintiff has not demonstrated what connection, if any, there is between MXRRU and/or the callers and any entity or resort with which RCI has a connection; and
- Most of the calls do not identify *any* resort or company with which RCI has a connection (or even mention timeshares).

Against this, Plaintiff points only to alleged similarities among the calls. The similarities that Plaintiff cites are insufficient to draw a *reasonable* inference that all of the calls were made by the same caller. But even if they were, they do not allow any inference at all that each specific call was made in order to sell timeshares at resorts within RCI's network, that the caller was acting as the subagent of that resort, or that the resort was acting as RCI's agent.

4360269v2

II. **RESPONSE TO PLAINTIFF'S 'ADDITIONAL MATERIAL FACTS'**

    A.    Admitted.

    B.    Admitted.

    C.    Admitted that Plaintiff received 27 calls during the referenced timeframe. Denied to the extent that Plaintiff purports to characterize the contents of prerecorded messages for which Plaintiff has produced no evidence.

    D.    Denied. (Dkt. 164-5, Dkt. 164-6)

    E.    Denied. *Id.*

    F.    Denied. *Id.*

    G.    Denied. *Id.*

    H.    Admitted.

    I.    Admitted.

    J.    Admitted.

    K.    Admitted.

    L.    Admitted.

    M.    Admitted.

    N.    Admitted.

    O.    Admitted.

    P.    Admitted.

    Q.    Admitted that Plaintiff provided his credit card information during the April 3, 2018 call and that his credit card statement showed a charge from MXRRU. RCI lacks sufficient

information and knowledge to admit or deny Plaintiff's motives for providing his credit card information.

  R. Admitted.

  S. Admitted.

  T. Admitted.

  U. Admitted.

  V. Admitted.

  W. Denied. (Dkt. 209-11).

  X. Admitted.

  Y. Admitted.

  Z. Admitted.

  AA. Admitted.

  BB. Admitted.

  CC. Admitted.

  DD. Admitted.

  EE. Admitted.

  FF. Admitted.

  GG. Admitted.

  HH. Admitted.

  II. Denied. (Dkt. 209-11).

  JJ. Denied. *Id.*

  KK. Admitted.

  LL. Admitted.

  MM. Admitted.

## III. ARGUMENT

### A. There is no basis for direct liability

Plaintiff does not cite any actual evidence supporting a theory of direct liability against RCI. Instead, he makes several attenuated inferences based on his presumptuous (and self-serving) conclusions about the identity of the caller, and further relies on a 10-K filing by Wyndham Destinations, Inc. ("Wyndham"). But Plaintiff's argument fails for at least two reasons: first, RCI's corporate representative testified that RCI did not make the calls at issue, which Plaintiff has not contradicted; and, second, the Wyndham 10-K filing on which Plaintiff relies does not refer to any party at issue here.

#### 1. Plaintiff failed to contradict the testimony of RCI's corporate representative

RCI's corporate representative testified under penalty of perjury that RCI did not make the calls in question. "A fact that is not specifically controverted is deemed undisputed." *Herrera v. City of Roswell*, 2013 WL 12085143, at *1 n.3 (D.N.M. Oct. 21, 2013). Here, Plaintiff has not cited any actual evidence contradicting the testimony of RCI's corporate representative. All Plaintiff presents is purported "similarities" between the various calls, such as the use of the "same woman's voice" on prerecorded messages, "similar excited intonations and cadence," similar pricing, and the inclusion of the resorts in RCI's network. Opposition Brief at 11. From these "similarities," Plaintiff not only infers a common source, but he further infers that the common source is RCI's "marketing division." "But an inference cannot be piled upon an inference, and then another inference upon that, as such inferences are unreasonable and cannot be considered as substantial evidence." *N.L.R.B. v. Meinholdt Mfg., Inc.*, 451 F.2d 737, 738 (10th Cir. 1971). Plaintiff has not presented any real evidence to contradict the testimony of RCI's corporate

4360269v2

representative, and the testimony therefore is deemed undisputed. There is no legitimate question that RCI did not initiate the calls at issue, and there is no basis for direct liability.

       **2.**       **Wyndham's 10-K is irrelevant**

Plaintiff cites to Wyndham Destinations, Inc.'s ("Wyndham Destinations") 2018 10-K filing with the Securities and Exchange Commission as supposed evidence that RCI maintains a "marketing division" that places calls such as the calls at issue here. Opposition Brief at 2. Plaintiff mischaracterizes Wyndham Destinations' statements in its 10-K, which all relate to marketing efforts for "our properties" — i.e., the properties owned by Wyndham Destinations. (Dkt. 209-2 at 10). Plaintiff's misleading citations do not support the conclusion that RCI or Wyndham Destinations made any of the calls at issue.[1]

    **B.**    **Plaintiff's attenuated theory does not establish that RCI's services were being marketed on the calls**

Plaintiff does not dispute that none of the non-time-barred calls mention RCI or its services. Instead, the calls are plainly aimed at marketing the resorts' timeshares and scheduling tours – all goods and services that RCI *does not* provide. The purpose of the calls (or at least the calls for which a purpose can be identified) was to sell hotel reservations.

Plaintiff cites a single case for the proposition that "[w]hen sales presentations promoted during a telemarketing call have 'a commercial nexus to a [defendant]'s business, *i.e.*, its property,

---

[1] A fundamental difficulty in this action has been Plaintiff's willful refusal to acknowledge the concept of corporate separateness. Plaintiff operates on the assumption that any entities with any common ownership can be treated interchangeably. This ignores a bedrock principle of corporate law. *West Ridge Group, LLC v. First Trust Co. of Onaga*, 414 F. App'x 112, 121 n.7 (10th Cir. 2011) ("Of course, under limited circumstances, two separate corporations with a common parent could be treated as a single entity under the law. But the mere fact of common ownership comes nowhere close to establishing the circumstances under which corporate form could be disregarded, a basic tenet of the law of corporations."); *New Mexico ex rel. Balderas v. Real Estate Law Ctr., P.C.*, 401 F. Supp. 3d 1229, 1308 (D.N.M. 2019) ("The general rule is that, absent highly unusual circumstances, the corporate entity will not be disregarded.").

products, or services,' the defendant can be held liable under the TCPA." (Response Br. at 14 (quoting *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 96 (2d Cir. 2017)). Plaintiff misreads that case, which did not involve vicarious liability in any way. Instead, that case stands for the proposition, irrelevant to this case, that a fax that invites someone to a *free* seminar at which goods or services are promoted, that fax constitutes an "unsolicited advertisement." RCI has never disputed that the calls at issue were telemarketing.

Plaintiff presents a novel theory: that a call to consummate a commercial transaction promotes any subsequent goods or services that might be offered to the recipient. Plaintiff has not cited to any case, anywhere, that would support such an attenuated theory of liability. Plaintiff's theory would lead to virtually limitless liability by anyone doing business with a company that engages in telemarketing. In the resort context, Plaintiff's theory would support liability on the part of vendors who supply the resort with goods like soft drinks that might be sold by the resort at its location, or destination tours or experiences that might sign up attendees at the resort. It would support liability for auto parts and accessory suppliers who sell to a dealership that engages in telemarketing. It would lead to liability on the part of pharmaceutical manufacturers whose drugs are prescribed by telemarketing health service providers, or suppliers of cosmetic products sold by telemarketing health spas. This Court should not adopt, for the first time, a theory that allows for liability based on such attenuated connections to telemarketing.

**C.     There is no basis for vicarious liability**

Plaintiff erroneously argues that he can establish vicarious liability without establishing who made the calls. There is no support for this in the law.

**1.     Plaintiff bears the burden of showing agency and subagency**

As a threshold matter, Plaintiff bears the burden of showing that an agency relationship exists. "An agency relationship cannot be presumed, but rather must be clearly demonstrated."

7

*Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 459 (10th Cir. 1996). *See also Southwest Stainless v. Sappington*, 582 F.3d 1176, 1188 n.12 (10th Cir. 2009) ("The law does not presume an agency status is present. The burden of proving the existence, nature and extent of the agency relationship rests ordinarily upon the party who asserts it."); *Bancoklahoma Mortg. v. Capital Title Co.*, 194 F.3d 1089, 1105 (10th Cir. 1999) ("The court will not infer agency simply because a third party assumed it existed."). Plaintiff has not produced any evidence to satisfy his burden here.

Plaintiff merely assumes that RCI and MXRRU have a business relationship without producing any evidence to support his assumption. Plaintiff cites the affiliation agreement, and subsequent amendment to the agreement, between RCI and Promotora Sunset Beach Clubs, S.A. de C.V. ("Promotora"), but has not produced any evidence linking RCI to MXRRU. The affiliation agreement does not even mention MXRRU. Plaintiff, it seems, merely assumes, without any supporting evidence, that Promotora and MXRRU are the same entity, or that MXRRU operated as a subagent of RCI through Promotora. The only evidence that Plaintiff relies on is that Orlando Arroyo is affiliated with both Promotora and MXRRU.

First, Plaintiff cannot rely on his own unsupported assumptions about the relationship between MXRRU and Promotora to argue that RCI is liable for any actions by MXRRU. *Pioneer Centres Holding Co. Employee Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (stating that "an inference is unreasonable if it requires a degree of speculation and conjecture that renders the factfinder's findings a guess or mere possibility") (internal quotation and alteration omitted). Promotora and MXRRU are distinct legal entities, and Plaintiff has not produced any evidence supporting an inference that MXRRU acted as Promotora's agent. *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1053 (10th Cir. 1993)

8

4360269v2

(stating that the party making the request bears the burden of showing "some injustice or inequity" that would warrant the court disregarding the corporate form).

Second, subagency can be found where a principal authorizes its agent "to appoint a subagent, and the subagent can then act as an agent for the principal even though the principal's control is indirect." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.2d 1229, 1251 (10th Cir. 2013). This requires showing not only the original principal-agent relationship, but also that the agent appointed the subagent with the principal's authorization to further act on behalf of the principal. *Kemether v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*, 15 F. Supp. 2d 740, 750-2 (E.D. Pa. 1998) (noting that "a subagent is treated as an agent" for liability purposes, and the person asserting agency has burden of showing the agency relationship between the principal and agent, and the agent and subagent). In other words, Plaintiff must establish each link of the agency and subagency. Plaintiff has failed to do so. It is not enough to show that RCI and Promotora had an affiliation agreement; Plaintiff must show that Promotora acted as RCI's agent, that RCI authorized Promotora to engage a subagent, and that MXRRU acted as subagent. Simply put, there is no evidence to support this theory.

Moreover, even where a business relationship exists, Plaintiff must demonstrate a level of control that one entity has over another to prove an agency relationship. "Mere authorization to assert a particular interest" is not enough to establish agency. *Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013). The critical question is the level of control one entity has over another. "An agency relationship is…defined as a relationship in which '[a] principal has the right to control the conduct of the agent with respect to matters entrusted to [the agent].'" *Elisberg v. Presbyterian Healthcare Services, Inc.*, 2006 WL 8443756, at *5 (D.N.M. Aug. 10, 2006) (quoting Restatement (Second) of Agency § 14)). The degree of control required to establish an agency relationship

turns on the particular facts of a case, as well as whether liability is sought in connection with a contract or tort claim. *See Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1256 (10th Cir. 2020) (noting that control is not a crucial factor with respect to contract liability and "a principal may be found responsible for an agent-independent contractor's contractual engagements even if it would not be liable for the contractor's torts"). In the context of tort liability, as is the case here, New Mexico courts consider whether the principal had a "right to control the actual day-to-day operation" of the agent. *Ciup v. Chevron U.S.A., Inc.*, 928 P.2d 263, 265 (N.M. 1996); *see also Estate of Anderson v. Denny's Inc.*, 987 F. Supp. 2d 1113, 1142 (D.N.M. 2013) (in wrongful death action, stating that that agency "centers primarily on whether the franchisor has [the] right to control the day-to-day operations of the franchisee"). Plaintiff has not produced any evidence that RCI had this degree of control over Promotora or MXRRU. Plaintiff presents nothing more than an affiliation agreement between RCI and Promotora, which, as noted above, is insufficient to establish an agency relationship.

> **2.  Plaintiff has not shown that any actual agency relationship that may have existed encompassed telemarketing**

Even if Plaintiff had shown evidence of an actual agency relationship between RCI and MXRRU, which he did not, as discussed above, Plaintiff still has not sufficiently shown that such a relationship encompassed telemarketing. "Agencies…come in many sizes and shapes: 'One may be an agent for some business purposes and not others so that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose.'" *Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014) (quoting 2A C.J.S., Agency § 43, p. 367 (2013) (footnote omitted)). Plaintiff has not produced any evidence that MXRRU, even if it was an actual agent or subagent of RCI, engaged in telemarketing as agent. As discussed above, the only contract Plaintiff cites is the

affiliation agreement between RCI and Promotora, which does not mention MXRRU and makes no reference to telemarketing.

Plaintiff has not produced evidence that RCI knew or should have known that MXRRU was engaged in telemarketing. Instead, Plaintiff merely cites to a 2011 Canadian investigation and a 2017 Federal Communications Commission investigation into MXRRU's telemarketing practices, along with a news article from 2011 and two from 2017 about the investigations. Opposition Brief at 6. Plaintiff does not show that RCI actually knew about these investigations or articles.

The mere existence of these investigations does not demonstrate that RCI "should have known" about MXRRU telemarketing. *See United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2nd Cir. 1993) (stating, in the context of a securities action, that "the mere presence in the media of sporadic news reports…should not be considered to be part of the total mix of information that would clarify or place in proper context the company's representations in its proxy materials"); *McIntosh v. Katapult Holdings, Inc.*, 2023 WL 5049044, at *12 (S.D.N.Y. Aug. 8, 2023) (stating that constructive notice may be based on facts "widely reported in readily available media" but finding that a single news article and a single website post dated two years before a merger "cannot reasonably be interpreted to constitute widespread reporting"). Similarly, Plaintiff cannot show any "widely reported" facts here. All Plaintiff can rely upon is an investigation and news article from 2011, and a subsequent investigation and two news articles in 2017, all of which occurred before any of the potentially actionable calls took place. There is simply no basis to find that RCI "should have known" about any telemarketing practices of MXRRU.

       **3.**       **There is no evidence of apparent authority**

11

To establish apparent authority, Plaintiff must "base the relationship upon words or acts of *the principal*, and not the representations or acts of the agent." *Lopez v. Transitional Hospitals of New Mexico, LLC*, 534 P.3d 1030, 1036 (N.M. App. Ct. 2023) (original emphasis). "Apparent authority emerges from a principal's manifestations *to a third party*." *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1235 (D.N.M. 2019) (emphasis added). Plaintiff has produced no evidence of apparent authority. Plaintiff relies on the representations of the callers, the investigations into MXRRU, and the mere presence of RCI's logo on resort marketing materials. This is not sufficient. As noted, the representations of the callers (*i.e.*, the purported agent) cannot establish apparent authority. Further, investigations into MXRRU have no bearing whatsoever on the question of apparent authority. Finally, the appearance of RCI's logo on resorts' marketing materials does not, by itself, establish apparent authority. *See Sine Enterprises, Inc. v. Jaguar Credit Corp.*, 1998 WL 88156 (10th Cir. Feb. 26, 1998) ("The existence of a logo does not, in and of itself, establish the existence of an agency relationship under the guise of apparent authority.").

### 4. There is no evidence of ratification

Plaintiff further argues that RCI is vicariously liable under a theory of ratification. "Ratification occurs after an actor performs an act when a principal retroactively authorizes the action." *Mohon*, 400 F. Supp. 3d at 1236. To be effective, however, "a principal must have 'knowledge of material facts involved in the original act.'" *Id.* (quoting Restatement (Third) of Agency § 4.06). "Full knowledge of the unauthorized act, and of all material matters related to it, is an essential of a valid ratification." *Id.* (quoting *American Nat. Bank of Sapulpa, Okla. v. Bartlett*, 40 F.2d 21, 23 (10th Cir. 1930)). Again, Plaintiff has not produced any evidence that RCI knew of any of the calls at issue, or that RCI took any affirmative action to ratify the calls on which Plaintiff could have relied.

**D.     There is no basis on which to infer that all calls were made by MXRRU**

In addition to the above fatal flaws, Plaintiff also bases his argument on the presumption that MXRRU generated the calls at issue but has not produced any evidence that MXRRU made all of the calls. Plaintiff argues that the "similarities" between the calls allow for an inference that they share a common source. But Plaintiff's argument rests on his own characterization of the calls, which fails to account for the variations among the calls, and his speculation that they must have been made by the same entity. That is not enough to defeat summary judgment. *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006) ("Inferences supported by conjecture or speculation will not defeat a motion for summary judgment."). *See also Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1004 (10th Cir. 2014) ("On summary judgment, however, a nonmovant is entitled to only those inferences that are 'reasonable.'"); *Kincaid v. Unified School Dist. No. 500, Kansas City, Kansas*, 94 F.4th 936, 949-50 (10th Cir. 2024) (affirming district court's granting of summary judgment and finding an inference that was contracted by documentary evidence to be unreasonable); *Hunt v. Central Consolidated Sch. Dist.*, 2016 WL 3574171, at *9 (D.N.M. Feb. 11, 2016) (granting summary judgment and finding that plaintiff's inference that defendants were united in a common unlawful goal was unreasonable in light of the fact that plaintiff had no evidence, direct or circumstantial, that one of the defendants participated in a conspiracy); *Colley v. Sandia Corp.*, 2000 WL 3674003, at *6 (D.N.M. May 2, 2000) (granting motion to dismiss or in the alternative for summary judgment and finding inference of intent to harm to be "ambiguous, and thus unreasonable" where the facts supported "various inferences of non-intentional infliction of harm").

Here, the evidence shows that only one of the calls had any apparent connection to MXRRU; that multiple different resorts were mentioned, including resorts with no connection to

MXRRU; that on one of the calls, the caller stated that the call center represented over 90 hotels; and that during nearly all of the calls, no specific resort was identified. These facts are consistent with a variety of inferences that the calls had nothing to do with MXRRU or RCI.

### E. There is no basis on which to infer that an ATDS was used

Finally, there is no evidence to support an inference that an ATDS was used on the calls. Plaintiff largely relies on the allegations in his Complaint and unsupported assertions in his declaration. It is well-established, however, that a "nonmoving party cannot survive a motion for summary judgment based on bare allegations in the pleadings without supporting evidence." *Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 800 (10th Cir. 1991). Likewise, "[c]onclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are…insufficient to defeat a proper motion for summary judgment." *Larez v. Tafoya*, 2000 WL 36739764, at *7 (D.N.M. July 25, 2000) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). There is simply no evidence whatsoever regarding the technology used to place the calls to Plaintiff. Therefore, the conclusion that technology subject to the TCPA was used is nothing but speculation.

## IV. CONCLUSION

For the foregoing reasons, RCI respectfully requests that this Court grant summary judgment in its favor.

Dated: April 23, 2024                     Respectfully submitted,


By  */s/ Joseph C. Wylie II*
Joseph C. Wylie II (*pro hac vice*)
70 West Madison, Suite 3100
Chicago, Illinois  60602
Telephone:  312-807-4419
Facsimile:  312-345-9060
joseph.wylie@klgates.com

14

4360269v2

Melanie B. Stambaugh
Jeffrey R. Taylor
Post Office Box 1888
Albuquerque, New Mexico  87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
mstambaugh@rodey.com
rtaylor@rodey.com

*Attorneys for Defendant RCI, LLC*

CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2024, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By  */s/ Jeffrey R. Taylor*
    Jeffrey R. Taylor

4360269v2