IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUBEN ESCANO,

    Plaintiff,

                                                                    No. 2:22-cv-00360-DHU-GJF

vs.

RCI, LLC,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

        This matter is before the Court on Defendant RCI's Motion for Summary Judgment ("Motion") (Doc. 164). Plaintiff Ruben Escano ("Plaintiff") filed a complaint alleging Telephone Consumer Protection Act ("TCPA") claims against various defendants, including the limited liability company RCI ("Defendant"). Doc. 80 ("Complaint"). Defendant then filed this Motion, arguing that there is no evidence to support a finding of liability on Defendant's part. Having considered the briefing and oral arguments of the parties, in addition to the relevant statutory and case law, the Court now grants in part and denies in part the Motion for the reasons set forth below.

**I. Facts and Procedural Background**

        This case is an action brought under the United States Telephone Consumer Protection Act TCPA. Doc. 80 at ¶ 1. Plaintiff alleges he was subject to automatically dialed and unsolicited telemarketing calls which he seeks to enjoin and for which he believes he is entitled to damages. *Id*. at ¶ 2. These claims arise from twenty-seven alleged telemarketing calls made by Defendants which happened between February 8, 2018, and January 2021. *Id.* at ¶ 15. Plaintiff's cell phone

number has been listed on the Federal Trade Commission's ("FTC") National Do Not Call Registry for over a decade. *Id.* at ¶ 20.

As a result of these calls, he alleges the fifteen following counts in his complaint: (1) Violations of 47 U.S.C. § 227(b)(1)(A)(iii): Utilizing an Automatic Telephone Dialing System ("ATDS") to transmit a telephone call to a cell phone; (2) Violations of 47 U.S.C. § 227(b)(1)(B): Utilizing an artificial or prerecorded voice to deliver a message to a telephone; (3) Violations of 47 U.S.C. § 227(b)(1)(D): Using an ATDS in such a way that two or more telephone lines of a multi-line business are engaged simultaneously; (4) Violations of 47 C.F.R. § 64.1200(a)(7)(i): Allowing a more than two-second delay before responding to answered call; (5) Violations of 47 C.F.R. § 64.1200(c)(2): Calling a telephone number on the Federal Trade Commission's National Do Not Call Registry; (6) Violations of 47 C.F.R. § 64.1200(d)(1)-(2): Failing to have a written policy for properly maintaining an internal do-not-call list; (7) Violations of 47 C.F.R. § 64.1200(d)(3): Failing to honor a do-not-call request; (8) Violations of 47 C.F.R. § 64.1200(d)(4): Failing to provide contact information for the sponsor of call; (9) Violations of N.M. Stat. Ann. § 57-12-22(A): Utilizing an ATDS with a prerecorded message to transmit a telephone call to a cell phone; (10) Violations of N.M. Stat. Ann. § 57-12-22(B)(1): Failing to disclose the name of the sponsor of a call within 15 seconds; (11) Violation of N.M. Stat. Ann. § 57-12-22(B)(2): Using a euphemism to mispresent the purpose of a call; (12) Violations of N.M. Stat. Ann. § 57-12-22(B)(7): Initiating a call using an ATDS that allows for a more than two-second delay when call is answered; (13) Violations of N.M. Stat. Ann. § 57-12-22(C)(1): Making a telephone solicitation to a telephone number on the Federal Trade Commission's National Do Not Call Registry; (14) Violations of N.M. Stat. Ann. § 57-12-22(C)(2): Circumventing a Caller ID service; and (15) Trespass to Chattels.

Defendant RCI, LLC now moves for summary judgment.[1] It argues primarily that (1) RCI didn't make any of the alleged phone calls, (2) the only call for which RCI is responsible for is time-barred, (3) there is no evidence of an agency relationship to establish vicarious liability of RCI, (4) the technology-based counts must be dismissed because there is no evidence showing how the calls were made, (5) there is no private right to sue under 47 C.F.R. § 64.1200(d)(4), and (6) RCI is entitled to attorney fees. Doc. 164 ("Motion"). The Court held a hearing on this Motion on May 20, 2024. The facts in this case are highly disputed, and therefore the Court does not find it to be judicially efficient to go through each fact the parties claim are undisputed. Instead, while evaluating whether summary judgement is appropriate, the Court will reference facts that are supported by evidence to determine whether there is a genuine dispute of material fact that should be evaluated by the jury or factfinder.

## II. Legal Standards

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Even if the parties disagree over the facts, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8, 106 S. Ct. 2505, 2510, 91 L. Ed. D 202 (1986). A fact will be determined to be material "if it can have an impact on the outcome of the lawsuit and genuine if a rational jury could find in favor of the non-moving party based on the evidence presented." *New Mexico Oncology & Hematology Consultants, Ltd. V. Presbyterian Healthcare Servs.,* 994 F.3d 1166, 1171 (10th Cir. 2021).

---

[1] On April 25, 2024, the Court dismissed Defendants Stephen Bradley and Timescape Resorts, LLC. Doc. 225. Those Defendants had also filed a Motion for Summary Judgement (Doc. 165) which is now moot.

If the movant can make a showing that there is no genuine dispute of material fact, "the non-moving party must make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Sec. & Exch. Comm'n v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022) (internal quotations omitted). At the summary judgment stage, it is the Court's duty to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1864, 188 L. Ed. 2d 895 (2014).

### III. Discussion

**A. Summary Judgment is Denied to RCI with Respect to the Question of Direct Liability.**

Defendant RCI argues that there is no evidence that it initiated the calls in question, and therefore there is no evidence of its liability for these claims. RCI presents the following facts, based upon affidavits provided by its employees, that it is not responsible for these calls: (1) RCI only places calls to existing members of its timeshare exchange network, a network that Plaintiff is not a part of; (2) RCI does not have a record of Plaintiff's phone number in its member database under any name; (3) RCI checked its call logs and determined that it had no record of any calls to Plaintiff's phone number; (4) the only call center that contacts RCI members in the United States is located in the state of Indiana and operates from a 317 area code,[2] and (5) the only phone call which specifically mentions RCI occurred outside of the statute of limitations and is thus time barred. Doc. 164 at 11. Due to these facts, Defendant believes it is entitled to summary judgement with respect to direct liability.

Plaintiff concedes that the February 8, 2018 call is outside of the four-year statute of limitations; however, he believes that it is still evidence of RCI's direct liability. In that call,

---

[2] According to Defendant, the alleged calls originated from a different area code.

4

Plaintiff has presented evidence that a representative on the phone call said, "we're a marketing division of RCI." Doc. 209, Ex. A at ¶ 32. Plaintiff alleges that all of the twenty-seven calls following the February 8 call bore striking similarities: (1) they all began with prerecorded messages of the same woman's voice, (2) the prerecorded messages all had similar excited intonations and cadence, (3) the prerecorded messages all announced a supposedly exclusive or pre-selected deal on vacation packages, (4) all of the pricing given on vacation packages was for $999, (5) all of the resorts offered were for resorts within RCI's timeshare exchange network, and (6) after Plaintiff sent his demand letter to the Defendants or their affiliates, he received only one more call. Doc. 209, Ex. A at ¶¶ 10–12, 22; Ex. J at 34:11–35:1.

On a motion for summary judgment, this Court must determine whether there is a genuine dispute as to any material fact and if the movant is entitled to judgment as a matter of law. When reviewing summary judgement, the Court is required to view this evidence in the light most favorable to the non-moving party, in this case Plaintiff Escano, and make favorable inferences from that evidence. *See EFLO Energy v. Devon Energy Corp.*, 66 F.4th 775, 787 (10th Cir. 2023) (the court must "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party" on a motion for summary judgement).

Based on these standards, the Court finds that Plaintiff has sufficiently shown the existence of disputed facts on this issue. The February 8 phone call presents evidence that the calls originated from the marketing division of RCI. While RCI cannot be held liable for that particular call because it occurred outside of the statute of limitations, the combination of the fact that call occurred and that all the subsequent calls had the same prerecorded messages of the same woman's voice, they offered the same vacation packages, the packages were the same price, the resorts where the packages were offered were all resorts within RCI's time-share network, and the fact that he ceased

5

receiving these calls after he began his action, presents enough facts that a reasonable factfinder could find RCI liable for the twenty-seven calls in question.[3] Therefore, summary judgement is denied with regards to direct liability.

### B. Summary Judgement is Granted in Part and Denied in Part with Respect to Vicarious Liability.

Defendant RCI petitions this Court to grant it summary judgement on the question of vicarious liability. There are three forms of vicarious liability for which RCI seeks summary judgement: actual authority, apparent authority, and ratification. The Court will analyze each form of liability in turn below.

#### 1) Summary judgement regarding actual authority is denied.

Defendant argues that there is no evidence that RCI has an agency relationship with MXRRU or Timescape, and that there is no evidence that the calls were initiated by a third party

---

[3] At the May 20, 2024, hearing, Defendant argued that the February 8 call could not be used at trial, even as evidence all calls came from the same source, because it is hearsay. However, it is well established that hearsay evidence can be used as evidence to combat a motion for summary judgement if the evidence would or could be admissible under some sort of hearsay exception at trial. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) ("At the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial . . .Parties may, for example, submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form.") (internal quotation omitted); *Bryant v. Farmers Ins. Exch.,* 432 F.3d 1114, 1122 (10th Cir.2005); *see also Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1193 (D. Kan. 2022).  Under certain circumstances, the statement in question may be introduced under Fed. R. Evid. 801(d)(2), where statements made by the opposing party in an individual or representative capacity, or statements made by a person whom the party authorized to make a statement on behalf of the subject, are not considered hearsay. Moreover, Plaintiff could produce the representative who made the statement or produce a recording that could be authenticated. Therefore, the Court considers this statement as evidence of direct liability. The Court is not now ruling on the admissibility of the statement, instead the Court is recognizing the *potential* admissibility of the statement such that it can be used at the summary judgment phase of the proceedings.

whose actions can be imputed to MXRRU or Timescape under principles of agency. Defendant then argues that even if the twenty-seven calls can be imputed to MXRRU and/or Timescape, they cannot be imputed to RCI. None of the calls mentioned RCI. Moreover, "without knowing who initiated each call, Plaintiff cannot demonstrate whether MXRRU or Timescape placed the call or had a relationship with that party sufficient to impute liability under traditional notions of agency." Doc. 164 at 16. According to Defendant, there was no mention of MXRRU or the resorts identified on the April 3, 2018 call, and the later calls cannot be connected except for "the similar prerecorded voice introducing the call." *Id*. at 18. It is not enough to prove that there is some sort of business relationship between RCI and MXRRU and/or Timescape, Plaintiff must prove that there was an agency relationship, in which an alleged principal controls the agent, and the agent assents to being controlled. *See Escano v. Concord Auto Protect, Inc.,* 2023 WL 4247703, at *3-4 (10th Cir. June 29, 2023).

Plaintiff provides seven facts to show that RCI is liable under a theory of actual authority: (1) the phone calls were made to encourage attendance at sales presentations at resorts within RCI's time share exchange network;[4] (2) during the April 3, 2018 call, a phone representative told Plaintiff, "the people that are processing your card are the same people that you deal with if you decide to purchase into timeshare;"[5] (3) RCI's "business development team" provides training to salespersons at the resorts mentioned during the calls on how to present and position RCI products to prospective members;[6] (4) RCI requires Mr. Arroyo's company – sunset world – to submit sales

---

[4] Doc. 209, Ex. A at ¶¶ 13-17.

[5] *Id*., Ex. E at 27, April 3, 2018 Call Transcript at 28.

[6] Doc. 210, Ex. J at 35:5-37:3, 76:11-77:4.

reports in a manner designated by RCI;[7] (5) RCI tracks not just the number of enrollments produced by resorts within its timeshare exchange network, but also the number of tours at those resorts, whether or not a sale was made;[8] (6) Mr. Arroyo sought assistance from RCI on "increasing the closing percentage of sales" of Mr. Arroyo's timeshare products;[9] and (7) RCI's parent company reports to its shareholders that it has "marketing agents" operating at resorts, "solicit[ing] tourists with…incentives in exchange for the tourists visiting the local resorts and attending sales presentations."[10] Additionally, at the May 20 hearing, Mr. Escano highlighted the fact that Mr. Arroyo was also an officer of MXRRU, further connecting RCI and MXRRU. MXRRU was the company that charged Mr. Escano's credit card after one of these calls. Doc. 209 at 5, ¶ Q; Ex. F. Plaintiff maintains that he does not have to prove which entity made the calls on behalf of RCI, just that RCI is liable for the calls. Doc. 209 at 12.

In order to properly plead a claim of actual authority, a plaintiff must show that the defendant's "actual authority stems from a principal's expressions to an agent." *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1235 (D.N.M. 2019) (citing *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1251 (10th Cir. 2013)). An agent is understood to have actual authority when "he, she, or it 'reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent' to engage in an action." *Id.* (quoting *1-800 Contacts,* 722 F.3d at 1251). To establish vicarious liability under the TCPA, a plaintiff must demonstrate "*some* facts regarding the relationship between an alleged principal and agent and cannot simply allege general

---

[7] Doc. 210, Ex. K1 at 8.

[8] Doc. 209, Ex. B at 43.

[9] Doc. 201. Ex. R at 2.

[10] Doc. 209, Ex. B at 10.

control in a vacuum." *Mestas v. CHW Group,* 508 F. Supp 3d 1011, 1023 (D.N.M. 2020) (emphasis in the original). "If an agent acts without actual or apparent authority in purporting to appoint a subagent, the person so appointed is the agent solely of the appointing agent and is not the principal's subagent unless the principal ratifies the appointment." *Escano v. Concord Auto Protect, Inc.,* 2023 WL 4247703, at *3-4 (10th Cir. June 29, 2023).

Similarly, to the issue of direct liability, the Court finds there are genuine disputes of material fact that prevent this Court from granting summary judgement on the issue of actual authority, including: (1) that the calls were made to encourage attendance as sales presentations at resorts within RCI's timeshare exchange network, (2) RCI's business development team trains people at these same resorts in selling timeshares, (3) Mr. Arroyo's company submits sales reports to RCI in a manner designated by RCI, (4) Mr. Arroyo is also an officer of MXRRU, (5) MXRRU was the company charging Plaintiff's credit card, (6) Plaintiff was told on the phone by a representative that the company charging the card would be the company Plaintiff would be working with, (7) RCI's parent company's Securities and Exchange Commission ("SEC") Form 10k states that they track the kinds of enrollments generated by these resorts, and they track tours, (8) Mr. Arroyo requested assistance from RCI on "increasing the closing percentage of sales" of Mr. Arroyo's timeshare products, (9) all the calls began with prerecorded messages of the same woman's voice, with similar intonations and cadence, and all the calls were about resorts in RCI's timeshare exchange network. These facts clearly create a genuine issue of material fact as to whether RCI was actually authorizing MXRRU, Timescape or some other agent to violate the TCPA.

Defendant argues that because Plaintiff lacks the precise knowledge of *who* made these calls (MXRRU or Timescape, or some other group), that it is entitled to summary judgement.

9

Plaintiff however has provided a fact which goes to the claim that MXRRU is responsible for the calls: MXRRU was the entity that charged Mr. Escano's credit card, and he was told on the April 3 call that "the people that are processing your card are the same people that you deal with if you decide to purchase into timeshare."[11] Given that the Court has already found it compelling that all of the calls shared the same distinct characteristics,[12] Plaintiff has provided sufficient evidence to show the existence of disputed facts concerning whether MXRRU originated the calls.

The Court does not find it critical to positively identify the caller because there is sufficient evidence that RCI has an agency relationship with whomever caller is because of the other evidence presented.[13] Defendant overlooks the fact that Plaintiff has also provided evidence that RCI business records and contracts support a finding of an agency relationship. Defendant points to no law or case that requires Plaintiff to identify the exact organization who is working as an agent for the principal, rather, the case law requires that Plaintiff provide facts which create a genuine dispute of material fact as to whether RCI expressly authorized these agents, whomever they may be, to work on behalf of RCI.[14] Moreover, the Court is permitted to make all reasonable

---

[11] Doc. 209, Ex. E at 27, April 3, 2018, Call Transcript at 28.

[12] The characteristics being tone, cadence, voice and content.

[13] Defendant cites *Amparan v. Demir*, 234 F. Supp. 3d 1110, 1115 (D.N.M. 2017), *aff'd sub nom. Amparan v. Lake Powell Car Rental Companies*, 882 F.3d 943 (10th Cir. 2018), for the proposition that Plaintiff must prove who initiated every single call and why the call is attributed to RCI. However, *Amparan* is not about vicarious liability in the context of TCPA claims, it is about negligent entrustments of motor vehicle and negligent supervision and training. Therefore, it does not stand for the proposition that in this context Mr. Escano must positively identify the identity of each caller. In fact, Defendant has not provided any cases in which a Court has found this to be a requirement of a TCPA claim.

[14] The Court notes that if identifying the agent was a requirement under the TCPA, then it would encourage principals to engage agents who would hide their identity and intentionally obfuscate responsibility under the TCPA.

inferences based on presented facts. *See Hornady Mfg. Co. v. Doubletap, Inc.,* 746 F.3d 995, 1004 (10th Cir. 2014). The Court finds it is reasonable to infer from these facts that RCI has an agency relationship with these telemarketers in pursuit of having people visit these resorts to purchase RCI's timeshares.

**2) Summary judgment regarding apparent authority is granted**.

Defendant similarly argues that there is no evidence of an agency relationship in which RCI gave any other company the apparent authority to make these calls: "Plaintiff cannot point to any facts demonstrating RCI held out MXRRU or Timescape, or any third party, as being authorized to act on its behalf at all, much less with respect to telemarketing. Accordingly, RCI is entitled to summary judgement." Doc. 164 at 20.

Plaintiff argues that under a theory of apparent authority, he has presented enough facts to satisfy the summary judgement standard. In particular, Plaintiff presents the following facts: (1) RCI permits sales teams at the resorts mentioned during the calls to use RCI branding and logos on marketing material;[15] (2) a phone representative from the February 8, 2018 call used RCI's tradename when he said that he was calling from a "marketing division under RCI;"[16] (3) MXRRU affiliates and officers, including Mr. Arroyo, have been connected to multiple publicized, federal investigations related to illegal telemarketing, conduct RCI should have been aware of.[17]

In order to make a case of apparent authority, a plaintiff must demonstrate that the defendant has the power to "to affect a principal's legal relations with third parties when a third

---

[15] Doc. 210, Ex. J at 106:18-110:15.

[16] Doc. 209, E. A at ¶ 32; Ex. E at 8.

[17] *Id.*, Ex. I at 2; Ex. M at 4.

11

party reasonably believes the actor has authority to act on behalf of the principal and the belief is traceable to the principal's manifestations." *Escano v. Symmetry Fin. Grp. of N.C., LLC,* No. 2:21-CV-0884 RB-GBW, 2022 WL 2072875, at *12 (D.N.M. Jun. 9, 2022) (citations omitted). The FCC has given a examples of apparent authority in the TCPA context: one would be a showing of the agent's "authority to use the seller's trade name, trademark and service mark," and another would be "a showing that 'the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.'" *Id.*

The Court finds that Plaintiff has not provided enough facts that, when taken together, demonstrate an agency relationship under a theory of apparent authority. While it may be true that a phone representative said that they were calling from a "marketing division of RCI" and that RCI logos were being used at these resorts,[18] Plaintiff fails to prove the knowledge requirement, that the agent believed it had authority to act on behalf of RCI and that RCI knew that the agent was violating the TCPA.[19]  It is simply not enough that Mr. Arroyo's other companies have been investigated in a manner that was public. Plaintiff would have to prove that in this alleged scheme, RCI knew that MXRRU or Timescape, or some other agent, was violating the TCPA on RCI's behalf. The Court will deny summary judgement on direct liability and actual authority because there is evidence that RCI was taking an active role in designing the telemarketing scheme (for example, the business development team doing trainings at the resorts, the sales reports from Mr.

---

[18] Also, as RCI points out in its reply brief, the use of the logo alone is not enough to establish apparent authority. *See Sine Enterprises, Inc. v. Jaguar Credit Corp.*, 1998 WL 88156 (10th Cir. Feb. 26, 1998).

[19] Ironically, these facts support a finding of direct liability but fail under a theory of apparent authority because of the knowledge requirement.

Arroyo's company, the enrollment tracking, and the parent company shareholder reports); however, Plaintiff has not provided evidence that RCI engaged in an agency relationship under the particular theory of apparent authority. Therefore, summary judgement is granted to Defendant RCI.

**3) Summary judgment regarding ratification is granted.**

Defendant argues that Plaintiff has not produced any evidence that RCI knew of any of the calls at issue, or that RCI took any affirmative action to ratify the calls. "Full knowledge of the unauthorized act, and of all material matters related to it, is an essential of a valid ratification." *Mohon*, 400 F. Supp. 3d 1189, 1236 (D.N.M. 2019) (quoting *American Nat. Bank of Sapulpa, Okla. v. Bartlett*, 40 F.2d 21, 23 (10th Cir. 1930)).

Plaintiff isolates two facts to make his ratification arguments: (1) MXRUU affiliates and officers, including Mr. Arroyo, have been connected to multiple publicized, federal investigations related to illegal telemarketing;[20] and (2) RCI gave sales awards based on the number of enrollments generated at the sales presentations Plaintiff was required to attend as a condition of his purchase.[21]

To hold a defendant liable for TCPA violations, a plaintiff must prove that the defendant "had knowledge of facts [about the telemarketer] that would have led a reasonable person to investigate further, but the [defendant] ratified without further investigation." *See McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 WL 1012471 (9th Cir. Apr. 5, 2022) (quoting Restatement (Third) of Agency § 4.06 cmt. d.).

---

[20] Doc. 209, Ex. I at 2; Ex. O; Ex. P at 3.

[21] Doc. 209, Ex. S; Doc. 210, Ex. J at 63:5-69:19.

Based on this standard, and even assuming Plaintiff's two key facts are true and undisputed, the Court finds the Plaintiff has not provided sufficient evidence such that he could meet the elements of a ratification claim at trial or show the existence of disputed fact on the issue. While it is true that "ignorance of a…telemarketer's [illegal conduct] is an ineffective strategy to avoid liability," Plaintiff has not provided a sufficient factual basis to support his contention that RCI had sufficient knowledge of the MXRUU's tactics that violated the TCPA that would have led a reasonable person to investigate further. *FTC v. Chapman,* 714 F.3d 1211, 1216-1219 (10th Cir. 2013). At the hearing on this motion, Plaintiff described Mr. Arroyo, an associate of MXRUU, as a "well-known illegal telemarketer within the industry."[22]  However, when the Court pressed Plaintiff to identify facts that go to whether or not Defendant had any knowledge of this illegal telemarketer's practices, Plaintiff could only point to three articles as evidence that Defendant should have done more investigation into MXRRU's telemarketing practices.[23]  In particular, one article described a 2016 investigation by the FCC into Sunset World Group, the resort network Mr. Arroyo owns. According to Plaintiff, as a result of that investigation the FCC fined Mr. Arroyo over $ 100 million based on his telemarketing schemes. Plaintiff also claims that the Canadian equivalent of the FCC investigated Mr. Arroyo.[24]

Even if the Court accepted these allegations about Mr. Arroyo's businesses as undisputed facts, evidence that there is public knowledge of Mr. Arroyo's past wrongdoings is not enough to

---

[22] Mot. Hr'g Tr., May 20, 2024, at 14:19-20. This Order cites to the court reporter's unofficial transcript. All page citations are subject to change on the official edited version of the transcript.

[23] Doc. 209, Ex. O; Ex. P at 3. Plaintiff also discussed contracts between Mr. Arroyo and RCI, that required Mr. Arroyo to submit sales reports to RCI and an affiliation agreement. Doc. 210, Ex. K1 at 8.

[24] Doc. 209, Ex. I at 2.

prove Defendant had enough knowledge at the time of these twenty-seven calls such that a reasonable person would have conducted further investigation into whether the calls were violations of the TCPA. Given that, when taken in their totality, the facts do not support a claim of ratification, the Court grants summary judgement to Defendant on the issue.

### C. Summary Judgment is Denied with Regards to the Technology Based Counts.

Defendant argues that the technology-based counts in the complaint should be dismissed because there is no evidence showing what technology was used to initiate the calls in question. According to Defendant, to prove these claims Plaintiff must show that an Automatic Telephone Dialing System ("ATDS") was used during these calls. Defendant asserts that there is no such evidence to prove that an ATDS system was used.

Plaintiff responds that there is sufficient evidence to prove that the alleged called were made with ATDS. According to Plaintiff, the evidence clearly establishes the elements of ATDS related claims under the Supreme Court's framework in *Facebook, Inc. v. Duguid*, 592 U.S. 395, 398-409, 141 S. Ct. 1163, 1167–73, 209 L. Ed. 272 (2021).[25] First, Plaintiff did not have a business

---

[25] In particular, Plaintiff alleged in his complaint that

> (a) his lack of a business relationship with Defendants; (b) Defendants' efforts to obfuscate their identity (potentially to hide their use of an ATDS); and (c) his receipt of over twenty-five similar pre-recorded, automated messages from specifically identified numbers (despite his lack of his consent, his request to not be contacted, and his Do Not Call registration). And if Plaintiff lacked any business relationship with Defendants—and was a Do Not Call registrant who specifically asked Defendants to stop calling—it is plausible that Defendants used the alleged ATDS (as opposed to a pre-produced list that could, for example, be filtered through the Do Not Call Registry or a separate list of callers who expressly asked for the calls to stop) to produce or store Plaintiff's number in connection with their telemarketing efforts. In sum, when the above facts are assumed to be true and viewed together, they plausibly suggest that Defendants called Plaintiff using ATDS—i.e.,

15

relationship with the callers before the calls. Doc. 209, Ex. A at ¶ 3. Second, the callers concealed their identity because they spoofed their phone numbers and lied when asked what company they were calling from. Third, Plaintiff received a total of twenty-seven calls with these prerecorded messages despite being on the Do Not Call registration. Therefore, he argues, there is a genuine issue of material fact for trial as to whether these calls utilized ATDS.

An ATDS system is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Under 47 U.S.C. § 227(b)(1)(A)(iii), the TCPA prohibits the use of "any automatic telephone dialing system or an artificial or prerecorded voice" to make "calls to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service or other radio common carrier service, or any service for which the called party is charged for the call." Section 227(b)(1)(D) of the same statute prohibits the use of ATDS in a way that "two or more telephone lines of a multi-line business are engaged simultaneously." Section 57-12-22(B)(7) of the New Mexico Statutes prohibits "using automatic dialing equipment that dials and engages the telephone numbers of more than one person at a time but allows the possibility of a called person not being connected to the calling person for some period not exceeding that established by the federal trade commission at 16 C.F.R. Sections 310(B)(1)(iv) and 310.4(b)(4)". Finally, under NMSA 1978, § 57-12-22(A), a person is prohibited from utilizing ATDS, "or push-button or tone-activated address signaling system with a prerecorded message to solicit persons to purchase goods or services unless there is an established business relationship

---

telemarketing equipment with "the capacity to use a random or sequential number generator."

Doc. 209 at 17-19.

16

between the persons and the person being called consents to hear the prerecorded message." Plaintiff brings claims under all four of these statutory provisions.

The Court, having reviewed the relevant statutory provisions and evidence Plaintiff has provided in response to Defendant's motion, finds there is sufficient evidence to create genuine issues of material fact with respect to whether or not Defendant used ATDS during these calls. Plaintiff has provided the Court with thirteen audio recordings which began with the same pre-recorded messages. Doc. 209, Ex. U. Plaintiff has submitted sworn declarations which describe the prerecorded messages. *Id.,* Ex. A at ¶ 4. Plaintiff submitted evidence that the phone number called during these calls was a cell phone number. *Id.,* Ex. D at 9-14.[26] Plaintiff submitted an audio recording where a phone representative stated, "I'm in a huge call center with over a hundred in the room right now." *Id.*, Ex. E at 24; April 3, 2018, Call Transcript at 22. Taken together, these support claims made under the relevant statutory provisions.

### D. Defendant's Motion for Summary Judgment is Denied With Regards to Whether There is a Private Right of Action Under 47 C.F.R. §64.1200(d)(4).

Defendant argues that Plaintiff's Count VIII, failing to provide contact information for the sponsor of call, must be dismissed because there is no private right of action under 47 C.F.R. §64.1200(d)(4). According to Defendant, Section 64.1200(d)(4) has procedures that a caller must institute before initiating any telemarketing calls. Acknowledging that the FCC does not specify under which section of the TCPA it promulgated Section 64.1200(d), Defendant argues that the requirements more closely align with Section 227(d) of the TCPA. That section establishes technical and procedural standards and does not have a private right of action. 47 U.S.C. § 227(d); *see Worsham v. Travel Options, Inc.,* No. EP-21-CV-278-DB, 2016 WL 4592373, at *7 (D. Md.

---

[26] This exhibit is a call log for Plaintiff's cell phone, a Pixel 3 XL, which has a phone number of (201) 527-8938.

Sept. 2, 2016) (Section 64.1200(d) "is more appropriately viewed as setting procedural standards and, therefore, within the realm of the TCPA's subsection d, for which no private right of action exists.").

Plaintiff responds that courts around the country have found that Section 64.1200(d) does provide a private right of action. *See Worsham v. Discount Power, Inc,* Civ. No. RDB-20-0008, 2021 WL 5742382, at *8-9 (D. Md. Dec. 1, 2021), *aff'd*, No. 22-1942, 2023 WL 2570961 (4th Cir. Mar. 20, 2023); *Callier v. Debt Mediators, LLC*, No. EP-21-CV-278-DB, 2022 WL 1423622, at *4 (W.D. Tex. May. 5, 2022) (finding that Subsection (d)(4) is "enforceable by [plaintiff]").

The Court agrees with Plaintiff, and the Third, Sixth and Eleventh Circuits, finding that there is a private right of action for Section 64.1200(d) because it was promulgated under Section 227(c) rather than Section 227(d) of the TCPA. When enacting the TCPA "Congress noted that '[a]utomated or prerecorded telephone calls made to private residences ... were rightly regarded by recipients as 'an invasion of privacy.'" *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264–65 (11th Cir. 2019) (citing *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012)). The specific disputed section of the TCPA is written as follows:

> A person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. §64.1200(d)(4). This paragraph is a subsection of the regulations and is one of the minimum standards required for compliance with Section 64.1200(d)'s requirement that any telemarketing to a residential telephone subscriber must maintain an internal do-not-call list. Given that this section of the regulations is clearly concerned with the privacy of people and their

ability to be free from telemarketing calls should they choose to be free, this Court agrees with the various circuit and district courts whom have found that Section 64.1200(d) was promulgated under 47 U.S.C. § 227(c)(1), which "concern[s] the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *See* 47 U.S.C. § 227(c)(1). The text of 227(c) compels the FCC to "initiate a rulemaking proceeding concerning the need to *protect residential telephone subscribers' privacy rights* to avoid receiving telephone solicitations to which they object." § 227(c)(1). An internal do-not-call registry clearly concerns the privacy rights of residential telephone subscribers, and therefore the Court agrees with the majority of other federal courts addressing this issue that this section is more properly promulgated under §227(c). *See Shelton v. Fast Advance Funding, LLC*, 805 F. App'x 156 (3d Cir. 2020); *Cordoba*, 942 F.3d at 1259; *Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011); *see also Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020); *Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 WL 2044730, at *13 (W.D. Mo. Apr. 28, 2020), *aff'd sub nom. Beal v. Outfield Brew House, LLC,* 29 F.4th 391 (8th Cir. 2022) (the substance of § 64.1200(d) more directly corresponds to the substance of § 227(c), and can be enforced via a private right of action); *Cunningham v. Rapid Response Monitoring Servs., Inc.,* 251 F. Supp. 3d 1187, 1200 (M.D. Tenn. 2017); *Barrett v. Vivint, Inc.,* No. 219CV00568DBBCMR, 2020 WL 2558231, at *5-6 (D. Utah May 20, 2020); *Dobronksi v. Selectquote Ins. Servs.*, 462 F.Supp.3d 784, 790-91 (E.D. Mich. May 27, 2020); *Hand v. Beach Entm't KC, LLC,* 456 F.Supp.3d 1099, 1125-26 (W.D. Mo. 2020).

### E. The Court Denies RCI's Request for Attorney's Fees.

Defendant requests attorney's fees because it believes the claims against RCI are groundless. Defendant argues the only colorable claim was the February 8, 2018, call which is

time-barred. "The rest of Plaintiff's claims against RCI were groundless, and Plaintiff knew it." Doc. 164 at 25.

Plaintiff argues that his claims are not groundless, as evidenced by the facts he provided in his response to prove that there was some form of liability against RCI for these telemarketing calls.

Attorney's fees should be awarded by courts for deceptive trade practices cases where the plaintiff brough an action that was groundless. For an action to be groundless, there must be "no arguable basis in law or fact to support the cause of action and the claim is not supported by a good-faith argument for the extension, modification or reversal of existing law." *Robey v. Parnell*, 2017 NMCA-038, ¶ 44, 392 P.3d 642. The Court finds an arguable basis in law and fact to support Mr. Escano's arguments. Therefore, the Court will not grant Defendant attorney's fees.

### IV. Conclusion

For the reasons stated above, the Court **DENIES** in part and **GRANTS** in part Defendant's Motion for Summary Judgement (**Doc. 164**).

**IT SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE